**Cynthia A. SMITH, Appellant,**

v.

**Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.**

**No. 90–926.**

United States Court of Veterans Appeals.

Argued Aug. 29, 1991.

Decided March 12, 1992.

See also 1 Vet.App. 479.

Francis M. Jackson, Portland, Me., for appellant.

Angela Foehl, with whom Robert E. Coy, Acting Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, and Pamela L. Wood, Deputy Asst. Gen. Counsel, Washington, D.C., were on the brief, for appellee.

Before KRAMER, MANKIN and IVERS, Associate Judges.

MANKIN, Associate Judge, filed the opinion of the Court, in which IVERS, Associate Judge, joined. KRAMER, Associate Judge, filed a separate concurring opinion.

MANKIN, Associate Judge:

Appellant, Cynthia A. Smith (Mrs. Smith), seeks reversal of a May 14, 1990, Board of Veterans' Appeals (BVA or Board) decision that denied her entitlement to dependency and indemnity compensation (DIC) benefits on the grounds that the death of her husband, an enlisted member of the United States Navy, was the result of his own willful misconduct and not incurred in line of duty. *Cynthia A. Smith in the Case of Michael W. Smith*, BVA 90-10929, at 6 (May 14, 1990). Because the BVA failed to comply with the requirement of 38 U.S.C. § 7104(d) (formerly § 4004(d)) that its decision provide an adequate statement of reasons or bases for its factual findings and conclusions of law, including its determination that appellant was not entitled to the benefit of the doubt under 38 U.S.C. § 5107(b) (formerly § 3007(b)), we remand the case to the Board for further adjudication. *See Gilbert v. Derwinski*, 1 Vet.App. 49 (1990).

## I. BACKGROUND

Instrumentman First Class Michael Wayne Smith (Smith), appellant's husband, was killed in a motorcycle accident in Sassari, Sardinia, Italy on November 3, 1987. Only the general circumstances leading to the accident are known, despite an investigation by the Navy. Precisely how or why the accident happened remains unclear. Several persons, appellant among them, submitted statements to the military authorities describing the events of the night of the accident. Testimony, while not consistent in every detail, suggests a sequence of events as follows.

At the time of his death, Smith was serving aboard the USS ORION, which was stationed in Italy. R. at 7, 57. On the early evening of November 2, 1987, the decedent and a group of his friends, celebrating the ORION's return from sea duty, gathered for a barbecue at the Smiths' quarters in Trinita Housing in La Maddalena. R. at 41. They were joined by Mrs. Smith and the couple's four year old daughter. Mother and daughter went to bed shortly after dinner, while Smith and his friends continued to talk, listen to music, watch movies on a videocassette recorder, and drink beer. Several of the servicemen fell asleep prior to midnight; Smith and

Instrumentman Seaman Jeffery S. Coley remained awake. R. at 42. Sometime after midnight, probably around 2:30 a.m., Smith and Coley decided to go for a ride on Smith's motorcycle. Mrs. Smith awoke and overheard the two men discussing the proposed ride; she advised Smith not to go, but to no avail. R. at 25. The two men left for a predawn motorcycle ride, with Smith driving and Coley riding as passenger. Neither man wore a safety helmet. R. at 42. At approximately 3:00 a.m., the motorcycle left the road in the vicinity of a curve and struck a large rock. Smith suffered severe head injuries and died seventeen hours later. An autopsy of his body revealed fractures of the skull and ribs, with cause of death attributed to massive cranial cerebral trauma. R. at 14–16. Coley suffered serious injuries in the accident, but survived.

On November 4, 1987, the Navy opened an informal investigation into the incident. R. at 24. Based on the physical evidence and the statements of various individuals, the Navy investigator concluded that the accident was caused by Smith's negligent operation of his motorcycle. R. at 44. He identified four specific negligent factors: 1) consumption of alcohol immediately prior to operating the motorcycle; 2) driving at excessive speed; 3) failure to wear a helmet; and 4) operating the vehicle in a "gross, reckless manner." *Ibid.* The investigator further concluded that Smith "was aware of the hazards involved with drinking and driving and not wearing a helmet while operating a motorcycle...." *Ibid.* Although the investigator had made no express finding that Smith had been intoxicated, he concluded that "Coley's injuries were the proximate result of assuming a foreseeable risk by accepting a ride on a motorcycle without a helmet that was being driven by an intoxicated person," that "IMSN Coley was intoxicated at the time of the accident," and that "IMSN Coley's injuries were incurred not in the line of duty due to his own misconduct." *Ibid.* In accordance with Navy policy regarding death cases, no line-of-duty determination was made concerning Smith's injuries. *See* Department of the Navy, *Manual of the Judge Advocate General* § 0810, at revised page 8–7.

The appellant, as the veteran's surviving spouse, filed a claim for DIC benefits. R. at 53. In June 1988, the Veterans' Administration (now the Department of Veterans Affairs) (VA) Regional Office denied her claim on the grounds that Smith's death was not service connected or in the line of duty, because it was the result of his own willful misconduct. R. at 57, 59; *see* 38 C.F.R. §§ 3.1(m), (n), and 3.301(a) (1991). A year later, the appellant was afforded a personal hearing at the Regional Office, following which the denial of her claim was reaffirmed. R. at 82. On further appeal, the BVA similarly concluded that Smith's death "resulted from operation of a motorcycle at excessive speed and otherwise in a reckless manner after having consumed alcoholic beverages," and "was the result of his own willful misconduct and was not incurred in line of duty." *Smith*, BVA 90–10929, at 6.

Upon review, we find that the BVA failed in this case to correctly apply the statutory presumption that an injury incurred during active military service is incurred in line of duty. Further, the BVA failed to adequately address the applicability of VA regulations relating to willful misconduct and to evidence of alcohol consumption in determinations of line of duty and misconduct. Consequently, we remand the case to the BVA for further review in accordance with our authority under 38 U.S.C. § 7252(a) (formerly § 4052(a)).

## II. ANALYSIS

### A.

The surviving spouse of a veteran who dies from a service-connected injury while in the active naval or other military service is entitled to receive DIC benefits administered by the Secretary of Veterans Affairs. 38 U.S.C. § 1310 (formerly § 410). For such death to be considered service connected, it must result from disability incurred in line of duty. 38 U.S.C. § 101(16). An injury incurred during active naval or other military service "will be

deemed to have been incurred in line of duty" unless such injury "was a result of the person's own willful misconduct." 38 U.S.C. § 105(a); *see also* 38 C.F.R. § 3.1(m) (1991). Willful misconduct is defined as "an act involving conscious wrongdoing or known prohibited action," and "will not be determinative unless it is the proximate cause of injury ... or death." 38 C.F.R. § 3.1(n) (1991). It is undisputed that Smith was in the active naval service at the time of his death. By operation of 38 U.S.C. § 105(a), his injuries are therefore deemed to have been incurred in line of duty unless it is shown that he engaged in willful misconduct, and that such misconduct proximately caused his injuries.

The appellant and the Secretary have expressed opposing views with respect to the nature and effect of the line-of-duty presumption established by 38 U.S.C. § 105(a). The appellant argues that, in view of the statute, her husband's death is presumed to have been incurred in line of duty; if the VA contends otherwise, it must shoulder the burden of establishing that her husband's death was the proximate result of his own willful misconduct. Appellant's Reply Brief at 1–2. In contrast, the Secretary argues that pursuant to 38 U.S.C. § 5107, the burden rests with the appellant "to make at least a prima facie showing that there is a valid claim." Appellee's Brief at 11–12. He concedes that 38 U.S.C. § 105(a) establishes a presumption in a claimant's favor, but argues that the presumption is rebutted once there has been an administrative finding of willful misconduct. *Id.* at 12–13.

We believe appellant has presented the stronger argument. In *Gilbert v. Derwinski*, 1 Vet.App. 49, 53–54 (1990), this Court examined the "unique standard of proof" that applies to veterans benefits claims. The Court noted that, in light of the "benefit of the doubt" rule established by 38 U.S.C. § 5107(b), "the preponderance of the evidence must be against the claim for benefits to be denied." *Gilbert*, 1 Vet.App. at 54. In this case, appellant is eligible to receive DIC benefits if her husband's injuries were incurred in line of duty; because he was in the active naval service, his inju-

ries are *deemed* to have been in line of duty unless one of the exceptions named in 38 U.S.C. § 105 applies. In other words, in all cases section 105 establishes a presumption in favor of a finding of line of duty. If the BVA finds that an exception does apply (in this case, willful misconduct), and denies the claim solely on the basis of such exception, the Board must establish that denial of the claim is justified by a preponderance of the evidence. In evaluating the evidence for and against the claim, the Board must conduct its review mindful of the statutory presumption in the veteran's favor. *Cf. Akins v. Derwinski*, 1 Vet.App. 228, 230 (1991) (statutory presumptions may, for some purposes, serve as the functional equivalent of evidence). The BVA decision does not indicate whether the Board accorded any weight whatsoever to the statutory line-of-duty presumption. On remand, the Board must address this issue.

### B.

The BVA's conclusion that Smith's death was the result of his own willful misconduct was predicated on its finding that his death resulted from operating his motorcycle "at excessive speed and otherwise in a reckless manner after having consumed alcoholic beverages." *Smith*, BVA 90–10929, at 6. The Court agrees with the BVA that there exists evidence of record that Smith consumed an undetermined quantity of beer, and that he drove his motorcycle "very fast" and in an unsafe manner. The record is devoid of direct evidence that any of these circumstances, if they indeed were present, were the proximate cause of the accident that led to Smith's injuries and death.

The Secretary has promulgated regulations concerning the effect of evidence of alcohol consumption in determinations of line of duty and misconduct. The relevant provision states:

The simple drinking of alcoholic beverage is not of itself willful misconduct.... If, in the drinking of a beverage to enjoy its intoxicating effects, intoxication results proximately and immediately in disability or death, the disability or death

will be considered the result of the person's willful misconduct.

38 C.F.R. § 3.301(c)(2) (1991).

■ In finding that Smith had engaged in willful misconduct, the BVA (unlike the Navy investigator) avoided stating that Smith was intoxicated when he climbed onto his motorcycle. Nevertheless, the Board rested its decision in part on its conclusion that Smith had been drinking alcoholic beverages on the night of his death. It supported this finding by citing: 1) Coley's statement that he, Smith, and the others started drinking soon after arriving at Smith's house, and continued drinking for most of the evening, R. at 38; 2) a statement given by another sailor present to the effect that the men had each consumed four to five beers during the evening, R. at 26; and 3) appellant's statement at her June 1989 personal hearing that she had observed her husband drink "maybe two" beers before she and her daughter went to bed. R. at 72. Although vitreous and blood alcohol specimens were drawn fifteen hours after the accident and an autopsy was later conducted on Smith's body, the examining pathologist rejected the clinical results (vitreous, 0% alcohol; blood from interior vena cava, 0.033 mg/cl alcohol; at autopsy, no smell of alcohol noted on examination of the peritoneal cavity. R. at 14.), as did the BVA, as unreliable indicators of Smith's condition at the time of his accident. The Board further concluded that, due to consumption of alcohol, Smith's condition was "incompatible with riding a motorcycle," basing this conclusion on Mrs. Smith's statement that she had awakened at about 2:30 a.m., and had told her husband not to go. (The Board apparently surmised that appellant's warning was based on her own observation of her husband's alleged impairment; her testimony, however, was silent on this point.) The Board also noted a Department of the Navy Traffic Accident Report which listed "alcohol involved" as one contributing circumstance. R. at 9.

What is noticeably missing from the record is any direct evidence that Smith's condition was impaired due to consumption of alcoholic beverages. The appellant's statement that she saw Smith drink "maybe two" beers is the only witness statement that directly addresses the quantity of beer Smith personally consumed. (Coley stated that "We drank most of the evening.... We weren't guzzling or having drinking contests.... I think we stopped drinking at about 2230 or 2300.", R. at 38, and another sailor stated that members of the group drank four or five beers, R. at 26. Those statements relate to the group in general, and would be consistent with a finding that Smith drank a greater or a lesser quantity than other attendees.) Not one of the witnesses stated that they observed Smith acting in a manner suggestive of intoxication. The clinical evidence, as noted, has been deemed of no value (apparently, no medical interpretation of the test results was submitted by either party). In its decision, the Board did not explain whether it did or did not find that Smith had been intoxicated. If the Board reaches such a conclusion upon remand, it must explain how it did so in light of the evidence, including any pertinent medical authority. *See Colvin v. Derwinski*, 1 Vet.App. 171, 175 (1991). Further, the Board must address the applicability of 38 C.F.R. § 3.301(c)(2).

In similar fashion, the Board concluded that the accident was the proximate result of Smith's operation of his motorcycle "at an excessive speed and in an otherwise reckless manner." *Smith*, BVA 90–10929, at 5. This conclusion is supported by two items of evidence. The first is the Navy accident report, which lists "speed excessive for conditions" as a contributing circumstance. R. at 9. The second is the statement of Coley, who reported:

As soon as we pulled out I knew we shouldn't have been out. IM1 Smith wasn't driving bad, he was just going fast, very fast. I didn't have a chance to look at the speedometer but we were going fast. I asked him to slow down. I wasn't watching too much where we were going I was trying to hold on. I asked him again to slow down, but he didn't, he was riding wheelies. The last thing I saw before we wrecked was a

curve going to the left and us going off the road.

R. at 38. Coley is apparently the only living witness to the accident. The BVA in its decision made no finding as to the probative value of his statement. This omission is, to say the least, rather glaring in light of the evidence that a doctor who examined Coley after the accident "noted a strong order [sic] of alcohol on his breath," R. at 39, that the investigating officer concluded that he had been intoxicated, and that Coley was himself potentially subject to disciplinary action. R. at 44. Assuming the accuracy and credibility of Coley's statement, the statement says much about his general impressions while riding as Smith's passenger, but notably offers no explanation for the actual cause of the accident. Even if Smith indeed performed "wheelies," there is no direct evidence that such behavior was actually involved in the accident. Smith may have shown a lack of precaution by choosing to ride without a helmet, but the record does not indicate that he was legally required to wear one, or that he would likely have survived the accident had he done so. Finally, Coley's statement is brought into question by the testimony of the appellant, who at her June 1989 personal hearing testified that her husband had been a highly experienced motorcycle driver who was careful when he rode with passengers. Here again, the BVA failed to provide appellant with an explanation of the basis on which it reached its factual conclusion that Smith's death resulted from his "operation of a motorcycle at excessive speed and otherwise in a reckless manner." *Smith*, BVA 90–10929, at 6.

## III. CONCLUSION

In summary, we find that, although there is evidence that appellant's deceased husband may not have acted wisely on that fateful night, the BVA did not provide adequate reasons or bases for its finding that Smith engaged in conduct that satisfies the VA's own definition of willful misconduct, i.e., "deliberate or intentional wrongdoing with knowledge of or wanton and reckless disregard of its probable consequences."

38 C.F.R. § 3.1(n) (1991). The BVA decision under review is "wholly inadequate to support its conclusion." *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991). Upon remand, the Board is instructed to issue a new decision explaining its conclusions in light of the applicable statutes and regulations. As we stated in *Fletcher*, however, a remand is not "merely for the purposes of rewriting the opinion so that it will superficially comply with the 'reasons or bases' requirement of 38 U.S.C. § 7104(d)(1) (formerly § 4004). A remand is meant to entail a critical examination of the justification for the decision." *Ibid.* If upon remand the Board again concludes that Smith engaged in willful misconduct and that such conduct was the proximate cause of his injuries and death, it must fully support those findings. In addition, it must explain why appellant is or is not entitled to the benefit of the doubt under 38 U.S.C. § 5107(b). Accordingly, the BVA's decision of May 14, 1990 is VACATED. The case is REMANDED to the BVA for further proceedings consistent with this opinion.

*It is so Ordered.*

KRAMER, Associate Judge, concurring:

While I concur with the majority's decision to remand the case to the Board of Veterans Appeals, I write separately to emphasize that despite the lack of evidence in this case regarding what occurred at the precise moment of the accident, the totality of the circumstances surrounding the accident are sufficient to justify a finding of willful misconduct. The record shows that Smith chose to take his motorcycle ride after an evening of drinking, R. 23, 25–29, and while there were no conclusive blood alcohol readings, the emergency room doctor who treated Jeffery Coley reported detecting a "strong odor of alcohol" on Coley's breath. R. 39. In addition, the Department of the Navy Traffic Accident Report listed both alcohol and "excessive [speed] for conditions" as factors contributing to the accident, R. at 9, and the appellant stated that immediately prior to Smith's fateful ride, she tried to persuade

him not to go. R. at 25. Finally, Coley stated that Smith did a number of "whee-lies" prior to the accident, and was driving "fast, very fast." R. at 38. *Cf. Lidy v. Film Transit, Inc.*, 796 F.2d 103 (5th Cir. 1986) (circumstances surrounding accident, such as evidence of speeding and the amount of care taken to avoid collision, can be used to determine driver's level of culpability); *Sharp v. Egler*, 658 F.2d 480 (7th Cir.1981) (evidence that a driver was speeding and struck a stationary object after driving off road, combined with driver's admission of drinking, was sufficient to create reasonable finding of wantonness); *McDaniel v. Frye*, 536 F.2d 625 (5th Cir. 1976) (knowledge requirement of wantonness need not be shown by direct proof, but may be shown by adducing facts from which knowledge is a legitimate inference).