**Glen BOOTON, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 94–910.**

United States Court of Veterans Appeals.

Dec. 13, 1995.

Glen Booton, pro se.

Mary Lou Keener, General Counsel; Norman G. Cooper, Assistant General Counsel; Adrienne Koerber, Deputy Assistant General Counsel; and Amy S. Gordon were on the brief for appellee.

Before FARLEY, HOLDAWAY, and IVERS, Judges.

FARLEY, Judge:

This is an appeal from a June 21, 1994, Board of Veterans' Appeals (BVA or Board) decision which denied an increased rating for chronic pyelonephritis. Pyelonephritis is "inflammation of the kidney and its pelvis, beginning in the interstitium and rapidly extending to involve the tubules, glomeruli, and blood vessels; due to bacterial infection." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1392 (28th ed.1994) [hereinafter DORLAND'S]. This appeal is timely and the Court has jurisdiction pursuant to 38 U.S.C. § 7252(a). On July 21, 1995, the Secretary filed a motion for remand, arguing that remand was necessary in order to give the BVA an opportunity to comply with this Court's decision in *Austin v. Brown*, 6 Vet.App. 547 (1994). However, for the reasons stated below, the Court finds that a remand is not warranted on that basis. Accordingly, the Secretary's motion will be denied and the BVA decision will be affirmed.

**I.**

The appellant served in the U.S. Army from November 1942 until May 1943 when he received a medical discharge for nephritis, parenchymatous, chronic. Record (R.) at 41, 293. Nephritis is inflammation of the kidney, and parenchymatous pertains to parenchyma, a term which is "used in anatomical nomenclature ... to designate the functional elements of an organ, as distinguished from its framework." DORLAND'S at 1108, 1233–34. The appellant filed a claim for service con-

nection in May 1943 (R. at 44–46), and he was service connected for parenchymatous nephritis in June 1943, rated as 30% disabling (R. at 48). In February 1947 his rating was reduced to 10% (R. at 71) based on the results of a January 1947 VA examination (R. at 59–68), and in September 1948 it was reduced to 0% (R. at 85–86) based on a report of the appellant's hospitalization at the U.S. Marine Hospital in Seattle, Washington (R. at 82).

The appellant has attempted to obtain an increased rating and service connection for other kidney-related conditions several times since 1948, but has been unsuccessful. *See* R. at 111, 116–17, 122–23, 135–36, 151, 160–61, 163–64, 170, 196, 212–14, 276. However, the designation of the appellant's service connection condition was changed to pyelonephritis in a July 1978 rating decision. R. at 196. A December 1989 VA examination diagnosed the appellant with nephrolithiasis, which is "a condition marked by the presence of [kidney stones]." R. at 272; *see* DORLAND's at 1109, 247. In April 1990, after hospital records revealing treatment for kidney stones were submitted (R. at 278–80), the regional office (RO) again found that an increased rating was not called for (R. at 288). After an inquiry on the appellant's behalf from Senator Bob Packwood, the RO responded in May 1990 that the appellant "suffers from nephrolitiasis [sic] (kidney stones). This condition is not service connected and is not related to his service-connected condition." R. at 300–01. The appellant's representative filed a Notice of Disagreement in May 1990 (R. at 304) and the RO sent the appellant a Statement of the Case (SOC) in August 1990 (*see* R. at 391).

A hearing was held at the RO in November 1990, and the appellant disagreed with the reclassification of his condition as pyelonephritis, and complained that he was still suffering from a lot of kidney pain. R. at 310–13. In February 1991, the hearing officer denied an increased rating, stating:

The review of ... hospital records from October of 1988 through January of 1991 show treatment for various conditions[;] however, there is no indication of an abnormal kidney function, the urinalysis was within normal limits.... There is no evidence of record that would tend to support the veteran['s] contention that the development of kidney stones is related to his Pyelo Nephritis [sic] other than by history.

R. at 387.

In a letter to the RO, the appellant wrote:

The law regarding Veterans' pensions clearly states [and] I quote "Once a veteran has a pension based on a certified disability, 2nd endorsement, only an Act of Congress can legally take such claim from said veteran.["]

I am sure you are well aware that I was given a "Certified disability, 2nd endorsement, discharge for" chronic nephritis parenchematous [sic]. Therefore the [VA] violated the "law of the land" when they took away my pension rights.

R. at 393. In March 1991, the BVA requested a BVA medical advisor opinion (BMAO) from Dr. William O. Bailey, apparently without informing the appellant that it was doing so. R. at 410. Dr. Bailey stated that the record did not reveal any definite evidence of nephritis or pyelonephritis, but rather, that "the evidence is indicative of orthostatic albuminuria.... The [kidney stones] are not related to the service-connected kidney condition." R. at 415. Albuminuria (also known as proteinuria) is "the presence of an excess of serum proteins in the urine," and orthostatic albuminuria is "a form of functional [albuminuria] ... which occurs on standing erect and disappears on lying down." DORLAND's at 1370. There is nothing in the record which suggests that the appellant was sent a copy of Dr. Bailey's report. In May 1992, the BVA remanded the appellant's claim and ordered the RO to provide a special genitourinary examination, without referring to the BMAO. R. at 421.

The appellant was examined in July 1992 by Dr. James Biemer, who diagnosed the appellant with chronic pyelonephritis. R. at 432–33. Dr. Biemer also stated, "The patient's continued bilateral flank pain, presence of bilateral [kidney stones], and current need for shock wave lithotripsy, all could conceivably be related to the patient's chronic pyelonephritis." R. at 433. Lithotripsy is a procedure which uses shock waves to break

up large calculi (such as kidney stones) in the upper urinary tract. DORLAND'S at 952. Dr. Biemer indicated that he planned on requesting a consultation from a urologist. R. at 433. In July 1993, Dr. Thomas Klein, the Chief of the Urology Section at a VA medical center, reviewed the appellant's records at the request of Dr. Biemer and concluded,

> The findings of my records review above are most compatible with "Minimal change Glomerulonephritis" [which is nephritis accompanied by inflammation of the capillary loops in the glomeruli of the kidney, DORLAND'S at 700,] or perhaps "Orthostatic Albuminuria" as cause of Mr. Booton's Albuminuria in 1943, and the results of subsequent evaluations indicate no ongoing evidence of continuing disability related to what in 1943 was called "Nephritis, Parenchymatous, Chronic." At sometime, either through clerical error, or perhaps misunderstanding, the term "Chronic Pyelonephritis" was used in place of the term "Parenchymatous Nephritis" on Mr. Booton's records. Pyelonephritis is a different entity caused by bacterial infection of the kidneys, and I find no evidence in the medical records that Mr. Booton ever had bacterial kidney infection during his time in the U.S. Army. The distinction between "Pyelonephritis" and "Parenchymatous Nephrits" [sic] or "Glomerulonephritis" is important because Pyelonephritis is associated with urinary tract infections and kidney stone formation, while Glomerulonephritis is not associated with these entities.... In my opinion, ... the kidney stones are in [no] way related to the asymptomatic albuminuria diagnosed as parenchymatous nephritis in 1943.... It does not appear to me that Mr. Booton has any currant [sic] disability related to his service connected medical discharge from the U.S. Army based on the records which I have reviewed.

R. at 496. In July 1993, the RO denied the claim for an increased rating, based on Dr. Klein's report (R. at 499–500), and furnished the appellant with a Supplemental SOC (SSOC) (R. at 502–07). In a June 1994 decision, the BVA also denied the appellant's claim, stating that although the appellant did have post-service kidney problems, "these

are non-service-connected; the medical opinions clearly indicate they are unrelated to the service-connected condition; and impairment from the non-service-connected conditions must be excluded when evaluating the service-connected disability." R. at 13.

## II.

### A. The Austin Issue

In *Thurber v. Brown,* 5 Vet.App. 119, 126 (1993), the Court held:

> [B]efore the BVA relies, in rendering a decision on a claim, on any evidence developed or obtained by it subsequent to the issuance of the most recent SOC or SSOC with respect to such claim, the BVA must provide a claimant with reasonable notice of such evidence ... and a reasonable opportunity for the claimant to respond to it.

In *Austin,* the Court held that the "response to which the claimant was entitled, as contemplated by *Thurber,* was not limited to argument or comment, but also included the claimant's right to submit additional evidence." 6 Vet.App. at 551. The Court also discussed 38 C.F.R. § 20.903 (1994) and the BVA Chairman's Memorandum No. 01–91–21, which together require the Board to notify the appellant and his or her representative when a BMAO is requested, to provide them with a copy of it, and to allow them 60 days from the date of mailing to respond to it. 6 Vet.App. at 549, 553. As noted above, the Secretary has moved for a remand on the basis that *Austin* has been violated because the appellant "was not notified of the opportunity to submit additional evidence in response to the BVA medical advisor's opinion." Motion at 5.

■ The Court finds that there was no *Thurber/Austin* error in this case. Those cases contemplate the scenario where evidence is obtained after the most recent SOC or SSOC, and then this evidence, which an appellant had no opportunity to respond to, is at least partially relied on by the BVA in denying his or her claim. Here, after obtaining the BMAO, the BVA did not deny the appellant's claim, but remanded the matter to the RO and ordered that further examina-

tion of the veteran's kidney disorder be conducted; this resulted in two more evaluations of the appellant's condition by VA doctors. Therefore, instead of relying on the opinion of the medical advisor to deny the appellant's claim soon after it was obtained, the Board remanded and ordered the development of more evidence.

Further, Dr. Klein's opinion regarding the appellant's condition was quite similar to that of the BVA medical advisor, Dr. Bailey, and the SSOC provided after the July 1993 rating decision fully apprised the appellant of Dr. Klein's findings. Therefore, if the appellant had any evidence that he would have brought forth in response to Dr. Bailey's opinion, he would have had an opportunity to present it in response to Dr. Klein's report, and he was given an adequate opportunity to respond to that evidence after the July 1993 rating decision and the subsequent SSOC. Given the unique facts of this case, no *Thurber/Austin*-type due process violation occurred.

The Court notes that there is no indication in the record on appeal that the BVA had notified the appellant that they were obtaining a BMAO, had provided him with a copy of it, and had given him 60 days to respond to it, as required by 38 C.F.R. § 20.903 and Memorandum No. 01–91–21. However, any such failure by the BVA to follow its own procedures was harmless error because, for the reasons explained above, it did not result in prejudice to the appellant. *See* 38 U.S.C. § 7261(b) (providing that "the Court shall take due account of the rule of prejudicial error").

### B. Claim for an Increased Rating

Although the Secretary's motion dealt only with the *Austin* issue and did not address the merits of this appeal, the Court has reviewed the appellant's informal brief and the entire record on appeal. Seeing neither a reason for further delay nor a need for additional briefing, the Court will turn now to the merits. *Cf. Soyini v. Derwinski*, 1 Vet.App. 540, 546 (1991) (holding that where evidence against appellant's claim was "overwhelming," if the Court were to remand due to BVA's failure to give adequate reasons or bases, it would be "unnecessarily imposing

additional burdens on the BVA and [ ]VA with no benefit flowing to the veteran").

 The appellant's claim for an increased rating is a new claim, and "the Court reviews the Board's findings of fact regarding new claims under a 'clearly erroneous' standard of review." *Cox v. Brown*, 6 Vet. App. 459, 460 (1994); *see also* 38 U.S.C. § 7261(a)(4); *Butts v. Brown*, 5 Vet.App. 532, 535 (1993) (en banc). "[U]nder the 'clearly erroneous' rule this Court is not permitted to substitute its judgment for that of the BVA on issues of material fact; if there is a 'plausible' basis in the record for the factual determinations of the BVA, ... we cannot overturn them." *Gilbert v. Derwinski*, 1 Vet. App. 49, 53 (1990); *see also Parts & Electric Motors, Inc. v. Sterling Electric, Inc.*, 866 F.2d 228, 233 (7th Cir.1988) ("To be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must ... strike us as wrong with the force of a five-week-old, unrefrigerated dead fish.... To be clearly erroneous, then, the [decision being appealed] must be dead wrong....").

 Dr. Bailey and Dr. Klein both explicitly stated that the appellant's current kidney symptomatology was unrelated to the kidney condition which caused his discharge from service in 1943. Even if we were to exclude Dr. Bailey's opinion from our analysis because of the BVA's failure to follow 38 C.F.R. § 20.903, *see* part II.A. *supra*, Dr. Klein's report alone provides a plausible basis for the Board's finding that the appellant's current kidney problems are unrelated to the condition he was service connected for in 1943. Therefore, the BVA was not clearly erroneous in finding that the appellant was not entitled to an increased rating.

### C. The Appellant's Contentions Regarding "Congressional Law Concerning Pensions"

 Finally, the appellant has argued since at least April 1991 that there is a law which forbids the removal of compensation from veterans once they are awarded service connection and compensation for a particular disability. *See* R. at 393, 435. (The appellant has occasionally used the word "pension" to describe which benefits are protected, but

since this case only involves service-connection-related compensation, his use of that word was incorrect.) Section 110 of title 38 provides: "A disability which has been continuously rated at or above any evaluation for twenty or more years for compensation purposes under laws administered by the Secretary shall not thereafter be rated at less than such evaluation, except upon a showing that such rating was based on fraud." Since the appellant's service-connected condition was only rated compensably for a little more than five years, § 110 does not apply, and the appellant's compensable rating was not protected when the RO took it away.

### III.

Accordingly, the Secretary's motion to vacate the June 21, 1994, BVA decision and remand this matter is denied, and the BVA decision is summarily AFFIRMED.