**Rachel M. DANIELS, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 94–28.**

United States Court of Veterans Appeals.

Sept. 3, 1996.

William G. Smith, Los Angeles, CA, for appellant.

Mary Lou Keener, General Counsel; Norman G. Cooper, Assistant General Counsel; Thomas A. McLaughlin, Deputy Assistant General Counsel; and Joan E. Moriarty, Washington, DC, were on the pleadings for appellee.

Before FARLEY, IVERS and STEINBERG, Judges.

IVERS, Judge:

The appellant, widow of deceased veteran Darren Wayne Daniels, appeals a September 16, 1993, decision of the Board of Veteran's Appeals (BVA or Board) denying entitlement to dependency and indemnity compensation (DIC) under 38 U.S.C. § 1310 and 38 C.F.R. § 3.5 (1995). *Rachel M. Daniels,* BVA No. 93–16921 (September 16, 1993). This Court has jurisdiction pursuant to 38 U.S.C. § 7252(a). For the reasons set forth below, the Court will vacate the BVA decision and remand the matter for the Board to comply with the Court's rulings in *Austin v. Brown,* 6 Vet.App. 547 (1994), and *Thurber v. Brown,* 5 Vet.App. 119 (1993).

## I.

The veteran served on active duty in the U.S. Marine Corps (USMC) from November 1982 until his death on August 30, 1986. Record (R.) at 5, 116, 133. The veteran's service medical records show nothing remarkable except a prescription for Antabuse dated February 19, 1986. R. at 61. Antabuse is a drug used in the treatment of alcoholism; it produces a sensitivity which results in a highly unpleasant reaction when the patient ingests even small amounts of alcohol. PHYSICIANS' DESK REFERENCE 2695 (50th ed.1996).

On August 30, 1986, the veteran was involved in an automobile accident that resulted in his death. R. at 77–80. Investigators at the scene of the accident discovered evidence that the veteran's car had ridden up on the median, crossed over four lanes of traffic, crashed through a highway guardrail and gone off a 40-foot embankment into a lagoon, where it was recovered 150 feet from land. R. at 90–97. Two witnesses traveling along the highway near the time of the accident

reported that the veteran had passed their vehicle going about 80–85 mph and crossed four lanes of traffic before breaking through the guardrail. R. at 78, 87–103.

Witnesses who had been drinking with the veteran prior to the accident reported that the veteran was "pretty intoxicated" earlier that evening and that he "seemed very drunk." R. at 84, 86. A toxicology report revealed that the veteran's blood ethanol level was 0.113% and that he had a vitreous fluid ethanol level of 0.136%. R. at 98. The death certificate listed the immediate cause of death as "salt water drowning" with "blunt force thoracic injuries" listed as a contributing condition. R. at 104. The USMC and other investigators concluded that the veteran was driving his automobile at an unsafe speed while intoxicated. R. at 79, 97.

The veteran's widow, appellant Rachel M. Daniels, filed a claim for DIC in September 1986. R. at 112–17. A VA decision issued on March 30, 1987, concluded that the veteran's death did not occur in the line of duty but rather was the result of "willful misconduct" on the part of the veteran. R. at 166–67.

The appellant filed a Notice of Disagreement (NOD) in July 1987. R. at 173. She perfected her appeal to the Board by filing a VA Form 1–9, Appeal to the Board of Veterans' Appeals (Form 1–9), on October 30, 1987. R. at 192. A hearing was held on March 2, 1988, in which the appellant contended that the accident was the result of extreme fatigue and recounted events that had occurred prior to, and on the day of, the veteran's death. R. at 198–216. She also testified about the veteran's previous problems with alcohol. R. at 201–04.

On June 17, 1988, the BVA issued a decision denying the appellant DIC benefits, finding that the veteran's death was the result of his own willful misconduct. R. at 218–24. In April 1990, the appellant attempted to reopen the disallowance of her claim, R. at 226, and filed a statement by Ron Roizen, a senior scientist at the Medical Research Institute, who disputed the Board's conclusion about the blood alcohol level (BAL) in the veteran's body at the time of death. R. at 246–57. She also attached other documents

to support her contention that the accident was the result of extreme fatigue. R. at 227, 268–74. The appellant filed another appeal on May 8, 1991, and attached another NOD. R. at 239–44.

The appellant filed another Form 1–9 on December 19, 1991, in which she waived her appearance at a VA hearing and asked that her appeal proceed to the BVA immediately. R. at 282. Prior to issuing its decision, the BVA sent the appellant's representative a list of evidence upon which it would rely in making the decision. R. at 293–94. The letter to the representative stated that "[t]he Board will consider additional evidence in this appeal only on written motion for good cause for its submission at this time and if the evidence is accompanied by a waiver of consideration by the agency of original jurisdiction." R. at 293. No response to this letter is in the record.

On September 16, 1993, the Board once again denied the DIC claim on the ground that the evidence showed that the veteran's death was not service connected but rather was the result of his own willful misconduct. R. at 4–17. The appellant then appealed to this Court.

## II.

The surviving spouse of a veteran cannot receive DIC benefits under 38 U.S.C. § 1310 if the cause of death of the veteran was the result of the veteran's own willful misconduct. 38 U.S.C. § 1110; 38 C.F.R. § 3.301(a),(b)(1995). "Willful misconduct" is defined as "an act involving conscious wrongdoing or known prohibited action"; "[i]t involves deliberate or intentional wrongdoing" and "must be the proximate cause of injury, disease or death." 38 C.F.R. § 3.1(n)(1),(3). If intoxication results proximately and immediately in disability or death, the disability or death will be considered the result of the person's own willful misconduct. 38 C.F.R. § 3.301(c)(2); *Gabrielson v. Brown*, 7 Vet. App. 36, 41 (1994).

## A.

◼ The appellant's claim for DIC was originally denied by a BVA decision issued

on June 17, 1988. R. at 218–224. When presented with a request to reopen a previously and finally disallowed claim, the Secretary must conduct a two-part analysis. *See Manio v. Derwinski*, 1 Vet.App. 140, 145 (1991). First, it must determine whether the evidence presented or secured since the prior final disallowance of the claim is "new and material." *See Evans v. Brown*, 9 Vet.App. 273, 283–84 (1996); *Colvin v. Derwinski*, 1 Vet.App. 171, 174 (1991). "New evidence" is evidence that is not "merely cumulative" of other evidence on the record. *Ibid.* Evidence is "material" where it is "relevant to and probative of the issue at hand" and where it is of "sufficient weight or significance that there is a reasonable possibility that the new evidence, when viewed in the context of all the evidence, both new and old, would change the outcome." *Sklar v. Brown*, 5 Vet.App. 140, 145 (1993); *Cox v. Brown*, 5 Vet.App. 95, 98 (1993); *Colvin*, 1 Vet.App. at 174. Second, if the Secretary determines that the new evidence is "new and material," he must reopen the claim and "evaluate the merits of the veteran's claim in light of *all* the evidence, both new and old." *Masors v. Derwinski*, 2 Vet.App. 181, 185 (1992). Whether evidence is "new and material" is a conclusion of law which this Court reviews de novo under 38 U.S.C. § 7261(a)(1). *See Masors*, 2 Vet.App. at 185.

▉ In her attempt to reopen, the appellant offered the following new evidence: (1) a statement by the veteran's commanding officer, Capt. Colby B. Smith, that the veteran was extremely fatigued the day of the accident as a result of a demanding work schedule (R. at 227); (2) a newspaper article about the effects of alcohol and lack of sleep (R. at 228); (3) an opinion by Dr. H. Kalant that the veteran's BAL could have been less than 0.100% because of inaccuracy due to delay in sampling (R. at 245); (4) a statement by senior scientist Ron Roizen disputing the veteran's BAL (R. at 246–57); (6) certificates awarded to the veteran for his service and achievements (R. at 260–68); and (7) a medical journal article which addressed the link between sleep disorders and ethanol concentrations. R. at 268–73. Based upon the evidence presented, the Board found that the appellant had submitted new and material evidence sufficient to reopen her claim for DIC benefits. The Court agrees with this finding. The opinion by Dr. Kalant and the statements by Capt. Smith are probative of the issue at hand, whether the veteran had engaged in willful misconduct, and when considered with all the evidence of record, create a reasonable possibility of a changed outcome. *Struck v. Brown*, 9 Vet.App. 145, 151–52 (1996).

## B.

Under 38 U.S.C. § 105(a), there is a presumption that an injury incurred during active military service will be deemed to have been incurred in the line of duty unless the injury was a result of the person's own willful misconduct or abuse of alcohol or drugs. A finding of "willful misconduct" is an independent finding which negates the "line of duty" presumption.

> [I]n all cases[,] section 105 establishes a presumption in favor of a finding of line of duty. If the BVA finds that an exception does apply (in this case, willful misconduct), and denies the claim solely on the basis of such exception, the Board must establish that denial of the claim is justified by a preponderance of the evidence.

*Smith v. Derwinski*, 2 Vet.App. 241, 244 (1992).

▉ In deciding whether the veteran's death occurred in the line of duty or resulted from willful misconduct, the Board made a finding of fact which the Court reviews under the "clearly erroneous" standard of review. *See* 38 U.S.C. § 7261(a)(4); *Cropper v. Brown*, 6 Vet.App. 450, 452 (1994); *accord Zang v. Brown*, 8 Vet.App. 246, 254 (1995). "If there is a 'plausible basis' in the record for the factual determinations of the BVA ..., [the Court] cannot overturn them." *Gilbert v. Derwinski*, 1 Vet.App. 49, 53 (1990). The Board is required to base its findings on "all evidence and material of record" and to provide a "written statement of [its] findings and conclusions, on all material issues of fact or law presented in the record." 38 U.S.C. § 7104(a),(d)(1).

After reviewing the record, the BVA here found that a preponderance of the evidence showed that the proximate cause of the veteran's death was driving a car at a high rate of speed while impaired by alcohol and fatigue. R. at 17. The record contained documentation showing that the veteran's automobile rode up the median and skidded across four lanes of traffic before going through the guardrail and down into the lagoon. R. at 88, 92, 95–96. A witness to the accident estimated that the veteran passed his automobile along the highway traveling at approximately 80 to 85 mph. R. at 95. California police determined that speeding was a primary factor in the accident. R. at 88, 97.

There is also evidence in the record to suggest that the veteran was fatigued at the time of the accident. A USMC investigation into the circumstances surrounding the veteran's death revealed that the veteran was "extremely fatigued" after military exercises the previous day. R. at 227. Testimony from witnesses also revealed that the veteran had not slept after going off duty. R. at 84, 85.

Finally, the evidence supports the finding that the veteran was impaired by alcohol. Companions of the veteran testified that he had been drinking alcoholic beverages on the night of his death and that they "were all pretty intoxicated." R. at 84–86. The autopsy results showed that the blood alcohol level was 0.113%. R. at 98. The BVA noted that the blood alcohol percentage limit for operating a motor vehicle in the state of California is 0.10%. CAL. VEHICLE CODE § 23152 (West 1995). Although the BVA did not rely upon the BAL to support a conclusion of willful misconduct (see 38 C.F.R. § 3.1(n)(2)), it did use this evidence to establish that the veteran was impaired by alcohol. R. at 6. Based upon the all of the evidence in the record, the BVA found that the veteran's death was caused by driving a car at a high rate of speed while impaired by alcohol.

The appellant appeals the BVA's conclusion on the basis of two opinions which dispute the accuracy of the BAL found in the veteran's body. The Board found that neither of these opinions sufficiently overcame the preponderance of the evidence which supports the Board's conclusion that the presumption of death in the line of duty was rebutted. The opinion of Mr. Roizen includes a conclusion that there is reasonable doubt as to the exact BAL and vitreous fluid levels in the veteran's body at the time of death. R. at 254–55. However, Mr. Roizen does not offer what he believes was the veteran's actual BAL. In fact, Mr. Roizen admits that "he is not qualified to render authoritative judgments regarding most of what I have described." R. at 255. He acknowledges that a BAL "must be considered by qualified specialists in toxicology and forensic medicine" and that drunk driving infractions rest "on an essentially legal interpretation of relevant laws and regulations." *Ibid.* Mr. Roizen's "best guess" at the veteran's BAL has no probative value in light of his lack of qualifications. *Espiritu v. Derwinski,* 2 Vet.App. 492, 495 (1992).

Dr. Kalant, though competent to render a medical opinion, does not offer any evidence to refute the BAL readings. Dr. Kalant opines that there was "a reasonable chance" that the BAL level "could have been less than 0.100%" R. at 245. This statement does not contradict the results from the investigation of the accident and the Board's conclusion that the veteran was impaired. The statement merely suggests that the BAL may not have been high enough to constitute a per se violation of the DUI statute. The Board found that neither Dr. Kalant's opinion nor Mr. Roizen's opinion refuted the evidence that the veteran had consumed alcohol or the evidence that he was impaired by alcohol. Because the Board based its findings on medical evidence and competent witness testimony, the findings on this record do not appear to be clearly erroneous. However, it is possible that the record may not be complete.

### C.

■ The Secretary admits that the BVA violated this Court's decisions in *Austin,* 6 Vet.App 547, and *Thurber,* 5 Vet.App. 119, when it sent a letter to the appellant which stated that the BVA would consider additional evidence submitted by the appellant only

on motion for good cause. R. at 293. In *Austin,* the Court stated:

> [I]f the BVA were to impose, when it intended to rely on its own medical advisor's opinion, the requirement of a showing of "good cause" by appellant under § 20.1304(b) as a precondition to submitting additional evidence ... such imposition would also violate *Thurber.* Appellant's right to submit evidence under *Thurber* is not premised upon a preliminary showing of "good cause."

*Id.* at 551. In *Thurber,* the Court held that the BVA must provide the claimant with reasonable notice of evidence which the Board intends to rely upon in rendering its decision, in addition to a reasonable opportunity for the claimant to respond to it.

Under *Austin/Thurber,* the Court should remand unless the error is not prejudicial to the appellant. *See* 38 U.S.C. § 7261(b) (Court shall take account of rule of prejudicial error); *Booton v. Brown,* 8 Vet.App. 368 (1995). In *Booton,* the Court held that the error was not prejudicial because the Board did not rely on the medical opinion it had obtained and it later remanded the claim and ordered the development of more evidence before rendering its final decision. *Id.* at 372. In this case, however, the BVA relied upon the medical evidence to show that the veteran might have been impaired by the effects of alcohol, even with a BAL below 0.100%, and thus to rebut the opinions of Dr. Kalant and Mr. Roizen, submitted by the appellant.

In the absence of the requirement to show good cause, it is possible that the appellant would have sought and obtained additional medical opinions, evidence, or treatises to rebut the Board's evidence. Under these unique circumstances, the Court cannot say that the BVA's error was not prejudicial. A remand to afford the appellant an opportunity to submit additional evidence, without precondition, is appropriate in this instance.

### III.

For the reasons stated, the Court VACATES the September 16, 1993, BVA decision and REMANDS the matter to the Board for adjudication consistent with this opinion.