James T. SANDERS, Jr., Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 95–982.

United States Court of Veterans Appeals.

Nov. 25, 1996.

James T. Sanders, Jr., pro se.

Mary Lou Keener, General Counsel; Ron Garvin, Assistant General Counsel; David W. Engel, Deputy Assistant General Counsel; and Susan A. Wuchinich, Washington, DC, were on the brief for appellee.

Before NEBEKER, Chief Judge, and FARLEY and IVERS, Judges.

IVERS, Judge:

The appellant appeals from a June 29, 1995, Board of Veterans' Appeals (BVA or Board) decision which found him incompetent for VA purposes. For the reasons stated below the Court will affirm the BVA's June 29, 1995, decision.

## I. FACTS

The appellant served on active duty in the U.S. Army from September 1948 to May 1952. Record (R.) at 25, 57. He was service connected for schizophrenic reaction in March 1957. R. at 83–84.

The appellant's service-connected schizophrenia has been rated from 70% to 100% disabling at various times from 1963 to 1973.

R. at 189, 202. In a June 20, 1973, rating decision, the regional office (RO) rated his schizophrenia 100% disabling and found him incompetent, both effective May 2, 1973. R. at 202.

On or about March 1983 VA requested that the County Court, Nueces County, Texas, appoint a legal guardian to handle the appellant's VA funds. R. at 785, 790. In 1986 the County Court appointed a legal guardian for him. R. at 825. Subsequently, he challenged the VA's determination that he was incompetent. R. at 254, 262–64, 266, 282. The BVA confirmed the incompetency determination in 1988. R. at 288.

In August 1989 a field examiner reported that the appellant was incompetent to handle his VA funds. R. at 304. The examiner noted in part:

> Dr. [Lilia M.] ORTIZ stated to me that James' mental condition has not improved; that he continues to have though[t] process disorders; that his judgement [sic] is impaired; that James has been very persistent about being called for a competency examination, and that he calls practically everyday to ask the same question over and over again, and that such behavior is the reflection of a person with an unstable mind.

*Id.* The examiner concluded by stating:

> James is a very persistent person and is unable to comprehend or to reason as to why he has been rated incompetent. He continues to make unnecessary requests through the local VA Outpatient Clinic for competency examinations and is constantly writing VARO, Houston, Texas on the same matter. Such requests should be considered as "nuisance correspondence", [sic] unless such requests are made by the veterans organization having the Power of Attorney or from the Individual Court Fiduciary. *All other requests should be disregarded.*

R. at 307.

In January 1990 the appellant's representative submitted a psychiatric report by U.R. Maruvada, M.D. R. at 310–12. Dr. Maruvada's impression was AXIS I schizophrenia, chronic, undifferentiated, in remission. R. at

312. He opined in part, "Apparently, six months ago [the appellant] applied for getting the funds directly to him. From this one evaluation it is felt that he maybe [sic] capable of handling his finances[;] however, this has to be considered with a broader perspective." *Ibid.*

In a January 30, 1990, rating decision, the appellant's incompetency rating was continued. R. at 314. The appellant's representative submitted a Notice of Disagreement, and a Statement of the Case (SOC) was issued. R. at 316, 322–26. The appellant submitted VA Form 1–9, Appeal to Board of Veterans' Appeals. R. at 328. On the form the appellant explained:

> I believe I am capable of handling my own funds or handling my check under supervision. All four doctors indicated in their report that my condition was in some form of remission. I am asking that the B.V.A. award me supervised pay or find me capable of handling my own affairs.

> I believe my condition is stable, as I only take a shot of prolixin once a month. I hope that the board relizes [sic] that I am better and over turn [sic] the decision made by the regional office.

R. at 328–29. Prolixin is indicated in the management of manifestations of psychotic disorders. PHYSICIANS' DESK REFERENCE 521 (48th ed. 1994).

In September 1990 the appellant underwent a VA psychiatric evaluation. R. at 335–38. Dr. Schlagenhauf diagnosed the appellant with AXIS I Schizophrenic disorder, undifferentiated type. R. at 336. He opined,

> Insofar as competency is concerned, I think that someone who sees Mr. Sanders on a regular basis would be in a better position to make this determination. Based on this relatively brief examination, I cannot find overriding evidence that there should be a change in his competency status.

R. at 337. An October 12, 1990, rating decision continued the appellant's incompetency rating. R. at 340.

On April 2, 1991, the BVA remanded the case to the RO. R. at 359–63. On remand the RO was to obtain all treatment records of the appellant's schizophrenic reaction disorder from the Corpus Christi VA Outpatient Clinic from August 1988 to the present; obtain the veteran's guardianship folder and associate it with his claims folder; have the veteran examined by a board of psychiatrists to determine whether he was competent; and readjudicate the claim. R. at 361.

Pursuant to the BVA's remand, the RO obtained the VA treatment records. R. at 365–553. In August 1991, an on-site field examination report concluded, after citing interviews with VA psychiatrist Dr. Ortiz and VA psychiatric social worker Mary Moore, that the appellant was incompetent to handle his own funds. R. at 556–61.

In August 1991 the appellant underwent a VA psychiatric evaluation by a board of three psychiatrists. R. at 563–68. He was diagnosed with AXIS I schizophrenia, undifferentiated type, in partial remission on medication, chronic. The psychiatrists opined:

> After extensive review of the C-file and the on site case evaluation, it is the opinion of this board that Mr. Sanders should be considered and continued on an incompetency status. It is quite evident from the interview that he is overly preoccupied and unrealistically focused on getting access to his funds, despite the fact that he apparently does not manage the money he receives directly appropriately at this point in time. He also denies any significant problems and is somewhat unrealistic in regards to thinking that gaining access to his funds will reestablish his relationship with his ex-wife. In light of this examination, and in view of his longstanding inability to function, current reported problems in even maintaining appropriate hygiene, and extensive repetitive history of unrealistic spending based on reports by multiple people, the patient does not appear to think in a rational manner in regards to money. While the patient is no longer overtly psychotic, it does indeed seem that he still has significant residual in his underlying illness which affects his judgment in regards to money.

R. at 567. An October 17, 1991, rating decision continued his incompetency rating. R. at 571.

In September 1992, the BVA remanded the appellant's case so that the evidence submitted to the RO could be considered pursuant to *Manio v. Derwinski,* 1 Vet.App. 140 (1991). R. at 583. In an April 6, 1993, rating decision, the RO determined that the appellant had not reopened his claim, that the evidence showed that he was incompetent, and that his incompetency rating was continued. R. at 586.

In a May 4, 1994, BVA decision, the BVA concluded that the January 31, 1989, unappealed determination by the RO, which held that evidence submitted since the prior appellate review did not show that the veteran was competent for VA purposes, was final on the basis of the evidence then of record. R. at 604. The Board also concluded that new and material evidence sufficient to reopen the veteran's claim was submitted since the January 31, 1989, decision with regard to the issue of the appellant's competency. *Ibid.* The Board remanded the case to provide the veteran an opportunity to submit additional evidence or argument and to address the question of whether the evidence submitted established the veteran's competency for VA purposes. R. at 607.

The veteran did not submit any information and a Supplemental SOC was issued. R. at 613–15. In an August 26, 1994, rating decision, the RO determined that new and material evidence had been submitted to reopen the claim for competency for VA purposes, but found the appellant incompetent. R. at 618.

A letter was submitted in September 1994 from a private physician, John L. Winkler, M.D., indicating that he had examined the appellant and had found no evidence of schizophrenia or other mental disorder which would indicate that the appellant was incompetent. R. at 621. In a September 20, 1994, rating decision, the RO reviewed Dr. Winkler's letter and found that his opinion was based upon one visit and no other information, as compared to the report of the board of psychiatrists that had reviewed the appellant's entire medical history. R. at 626. The RO confirmed the previous rating decision, finding the appellant incompetent for VA purposes. R. at 625–26.

In January 1995 the appellant underwent a VA psychiatric examination administered by Jane E. Parker, M.D. R. at 637–41. The examination resulted in a determination that he was incapable of handling his VA funds. Dr. Parker's determination was based upon the examination, his clinical history, and a field examination performed in 1991. R. at 640. She concluded, "According to Mr. Sanders' presentation today, I do not see any changes since he was evaluated in 1991." *Ibid.* The AXIS I diagnosis was chronic undifferentiated schizophrenia and suspected opiate abuse or dependence. R. at 641.

A February 13, 1995, rating decision confirmed the prior RO decision. R. at 644. In May 1995 the appellant's service representative submitted an informal hearing presentation, contending that the appellant was competent to handle his own funds, that VA had the burden to prove he was incompetent, and that the RO had placed an unfair burden on the appellant by requiring him to prove that he was competent. R. at 662–65.

On June 29, 1995, the BVA rendered the decision currently on appeal, concluding that the appellant was incompetent for VA purposes. R. at 9. The Board found that, because of his totally disabling schizophrenia, he lacked the mental capacity to contract or to manage his own affairs, including the disbursement of funds without limitation. *Ibid.*

## II. ANALYSIS

The procedural posture of this restored competency claim must first be considered. The RO and the Board treated the effort to establish competence as one to reopen an earlier finally decided similar claim. However, to view the appellant's renewed quest for a competency determination under the reopening rubric of 38 U.S.C. § 5108 fails to recognize the true nature of the appellant's effort. We hold that seeking to lift an incompetency determination must be viewed procedurally as similar to seeking an increased disability rating—that is, as a new claim. *Cf. Booton v. Brown,* 8 Vet.App. 368, 372 (1995), and *Proscelle v. Derwinski,* 2 Vet.App. 629, 631–32 (1992). However, VA's treatment of this matter, as one requiring new and materi-

al evidence to reopen, does not affect our decision on the merits.

The Board has been most attentive to ensure that the appellant's claim of restored competence was fully examined and considered. Our task is to determine whether the Board's decision is clearly erroneous. We apply that standard under guidance from *Zang v. Brown*, 8 Vet.App. 246, 254 (1995), where that review standard was applied to a question of insanity, and from *Johnson v. Brown*, 9 Vet.App. 7, 9 (1996), and *Lovelace v. Derwinski*, 1 Vet.App. 73, 74 (1990), applying the standard to degree of impairment findings, and, of course, from our seminal decision in *Gilbert v. Derwinski*, 1 Vet.App. 49, 53 (1990).

Mental incompetency is defined by regulation as pertaining to a person "who because of injury or disease lacks the mental capacity to contract or to manage his or her own affairs, including disbursement of funds without limitation." 38 C.F.R. § 3.353(a) (1995). Rating agencies are authorized to make official determinations of incompetency and competency for the purpose of existing laws, regulations, and VA instructions. 38 C.F.R. § 3.353(b) (1995). When a beneficiary is rated incompetent, the VA Veterans Services Officer (VSO) of jurisdiction will be informed of the possible necessity for the appointment or recognition of a fiduciary. The VSO is then to develop information regarding the beneficiary's social, economic, and industrial adjustment. If the VSO, upon review of the evidence, concurs in the rating of incompetency, he will proceed to effect the appointment of a fiduciary to recommend payment in accordance with 38 C.F.R. § 13.56 (1995). Alternatively, if the VSO believes that the beneficiary is capable of administering the funds payable, without limitation, the evidence upon which that opinion is based will be referred to the rating agency with a statement as to his conclusion. The rating agency will then consider the evidence of record in determining whether its prior decision should be revised. Reexamination may be requested as provided in 38 C.F.R. § 3.327(a) and (b) (1995), if necessary to evaluate the extent of the veteran's disability. 38 C.F.R. § 3.353(b).

Additionally, 38 C.F.R. § 3.353(e) provides: *Due process.* Whenever it is proposed to make an incompetency determination, the beneficiary will be notified of the proposed action and of the right to a hearing as provided in [38 C.F.R.] § 3.103. Such notice is not necessary if the beneficiary has been declared incompetent by a court of competent jurisdiction or if a guardian has been appointed for the beneficiary based upon a court finding of incompetency. If a hearing is requested it must be held prior to a rating decision of incompetency. Failure or refusal of the beneficiary after proper notice to request or cooperate in such a hearing will not preclude a rating decision based on the evidence of record.

In this case, the appellant was determined to be incompetent by both VA and the County Court of Nueces County, Texas. R. at 202, 785, 790, 825. The appellant argues that his schizophrenia is in remission and under control and that, therefore, he should be permitted to manage his own funds. Appellant's Brief (Br.) at 2. This lay assertion is not competent medical evidence. *Zang*, 8 Vet.App. at 254; *see also Moray v. Brown*, 5 Vet.App. 211 (1993); *Espiritu v. Derwinski*, 2 Vet.App. 492 (1992). Where an issue involves medical knowledge, competent medical evidence is required. *Zang*, 8 Vet. App. at 254; *see also Grottveit v. Brown*, 5 Vet.App. 91, 93 (1993).

There are several medical opinions from both private and VA psychiatrists in the record. Two opinions, both from private physicians, weigh in favor of competency. However, these opinions were each based upon a single evaluation, at the request of the appellant, and not upon a review of the appellant's claim file and past medical history. In fact, Dr. Maruvada did not definitively conclude that the appellant could handle his own funds. Specifically, he stated, "From this one evaluation it is felt that he *maybe* [sic] capable of handling his finances[;] however, this has to be considered with a broader perspective." R. at 312 (emphasis added). Dr. Winkler indicated that he had found no evidence of a mental disorder

which would render the appellant incompetent.

The record contains opinions from several VA examinations. Dr. Schlagenhauf opined that he did not see a need for a change in the appellant's competency status based on his brief examination, but did state that someone who saw the appellant on a regular basis would be in a better position to make the determination. R. at 337. A three-member board of psychiatrists opined, after an extensive review of the appellant's claims file, past medical history, and an on-site case evaluation, that the appellant should be considered incompetent. The three-member board of psychiatrists referred to the appellant's long-standing inability to function, problems with his hygiene, and reports by several people indicating that the appellant had a history of unrealistic spending. R. at 567. The most recent examination in the record was conducted in January 1995 by Dr. Parker. Dr. Parker determined that the appellant was incapable of managing his funds. Dr. Parker's conclusion was based upon her examination, a field report from 1991, and the appellant's medical history. R. at 640. All of these psychiatrists had the advantage of having the appellant's psychiatric history available for review in order to make a more complete diagnosis.

The Court finds that there is a plausible basis in the record for the BVA's determination that the appellant was incompetent for VA purposes and incapable of managing his funds.

■ Additionally, the appellant has objected to VA's having conducted additional psychiatric examinations on remand when they were not specifically ordered by the Board. Appellant's Br. at 1. The Court has held that VA has an obligation to assist veterans and that, where it is determined that there is an inadequate record, VA is obligated to develop relevant evidence which may include medical examinations. *See Perry v. Brown,* 9 Vet.App. 2, 6 (1996); *Littke v. Derwinski,* 1 Vet.App. 90, 92–93 (1990). Ensuring that VA's duty to assist is met does not represent error.

## III. CONCLUSION

For the reasons stated above, the BVA's June 29, 1995, decision is AFFIRMED.