# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 01-1844

JAMES T. SANDERS, JR., APPELLANT,

V.

ANTHONY J. PRINCIPI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided   November 19, 2003  )

*Peter J. Meadows*, of Miami Beach, Florida, was on the pleadings for the appellant.

*Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Carolyn F. Washington*, Deputy Assistant General Counsel; and *Ralph G. Davis*, all of Washington, D.C., were on the pleading for the appellee.

Before FARLEY, IVERS, and GREENE, *Judges*.

IVERS, *Judge*:   The appellant appeals a September 27, 2001, decision of the Board of Veterans' Appeals (Board or BVA) that determined that he was not competent to manage his own funds.  On April 12, 2002, the appellant filed a "Motion for Remand, for Acceptance of this Motion in Lieu of a Brief, and to Stay Proceedings."  On April 26, 2002, the Secretary filed a "Motion in Opposition to Appellant's Motion for Remand, for Summary Affirmance, and for a Stay of Proceedings."  The appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a).  For the reasons set forth below, the Court will deny the appellant's motion and affirm the Board's decision.

## I.  FACTS

The appellant was in active service in the U.S. Army from September 1948 to May 1952. Record (R.) at 11.  In March 1955, he was diagnosed with paranoid schizophrenia.  R. at 13.  From

June 1955 to June 1956, he required hospitalization for this condition. R. at 13. On March 4, 1957, the Board decided that the appellant's illness arose during his time in the service, and service connection was granted. R. at 13-14. His condition was rated variously between 70% and 100% between 1963 and 1973. *See* R. at 1-2. In a June 20, 1973, rating decision, the regional office (RO) rated him at 100% for schizophrenia and found him incompetent for purposes of managing his VA funds. R. at 25. In 1986, a legal guardian was appointed for him. *See* R. at 2; *see also* R. at 27-28. The appellant's competency has been adjudicated before by this Court. *See Sanders v. Brown*, 9 Vet.App. 525 (1996). In that decision, the Court affirmed the Board's decision that concluded that he was incompetent. Since that decision, a May 1998 rating action determined that the appellant was *competent* effective May 4, 1998. R. at 76-77. The decision was based on a single May 1998 psychiatric examination that concluded that his schizophrenia was in remission, and apparently under control. *See* R. at 69-74. That psychiatric examiner noted: "Mr. Sanders was interviewed at length today, for over an hour." R. at 73.

In June 1998, the appellant's sister implored VA to reconsider its decision. R. at 82-87. In August 1998, a field examiner opined that the appellant was incompetent. R. at 89-96. That examiner observed the following about the appellant:

> [He] is a very good "con artist", and it appears that he was able to con Dr. Mahaney [who conducted the May 1998 examination] into believing that [he] was competent to manage his own VA funds. Every professional at the local VA Outpatient Clinic who [is] familiar with the veteran's mental condition [was] shocked in disbelief to hear that based on a one[-]hour and one[-]time examination, a VA physician unfamiliar with [the veteran's] mental condition had decided that [he] was competent to manage his own VA funds. . . .
>
> [I have] been dealing with [the appellant] for the past 15 years, and [am] very familiar with his mental condition. If I knew that [he] was a responsible person and would not throw [away] or lend his money, and that he would use his money to improve his quality of life and for his own personal use, I would be the first person to recommend that [he] be rated competent. However, I cannot in good conscience make such recommendation[s] knowing that the veteran is definitely not mentally competent to manage his own personal and financial affairs.

R. at 95. The veteran was given another VA psychiatric examination in January 1999. R. at 98-103. The examiner reviewed the veteran's entire claims file, and concluded that he was incompetent for

VA purposes. R. at 98-103. The examiner stated:

> Although Mr. Sanders' illness is under relative control due to regular injections of a long[-]acting antipsychotic medication, it cannot be said to be in remission since he still requires medication on an every[-]two-week basis. Evidence of poor judgment is indicated by the fact that he does not know his dosage of his medication [or] that he receives it every two weeks despite clear evidence in his pharmacy profile that injections of 25 mg have been given every two weeks. The field worker also indicates that all persons with direct day-to-day knowledge of his judgment and behavior do not feel that he has the judgment necessary to care for himself without help or to maintain his funds without help. This includes the opinion of Dr. Ortiz who is his doctor at Corpus Christi VA Outpatient Clinic. In addition, there were other discrepancies on this exam that indicate a shallow knowledge and understanding of day-to-day needs of living, including the fact that veteran did not relate that he would need money for transportation, need money for maintenance of his house, and need money for clothes on his assessment of how he spends his money per month. He also noted that he did his own cooking and shopping and only later when questioned about a housekeeper did he indicate that he paid a housekeeper $400 a month. From all of these factors, it is my overall opinion that the veteran is not competent for pay purposes.

R. at 102-03. The appellant was diagnosed with chronic undifferentiated schizophrenia with a Global Assessment of Function (GAF) score of 42 to 45. R. at 103. In March 1999, a VA rating decision concluded that he was incompetent (R. at 162-63), and in April 1999, the RO requested that a guardian be appointed to assist the appellant with management of his funds (R. at 167).

Another field examination was conducted on May 17, 1999, for the purpose of appointing a fiduciary for the veteran and considering whether the Supervised Direct Pay method of payment was appropriate. R. at 180-86. The examiner interviewed the appellant, his son, his attorney and his secretary, his ex-wife, his VA psychiatrist, and his sister and recommended that the veteran's attorney, John H. Miller, be re-appointed as the court fiduciary. *Id*. The examiner noted that the Supervised Direct Pay method had been considered but that "the veteran could not be trusted to comply with the instructions from [a] field examiner." R. at 186. Significantly, the field examiner noted that the appellant's VA psychiatric examiner, Dr. Ortiz, "confirmed that there has been no improvement in the veteran's mental condition, and that none is anticipated." R. at 181. The field examination report also reflected that Dr. Ortiz had said that the appellant was unstable and dysfunctional, his cognitive skills were impaired, he did not comply with his medical requirements,

3

and "that he is obsessed with the nottion [sic] of being competent to manage his own VA funds." *Id.* The Board issued a decision on November 28, 2000, that was appealed to this Court, and the parties filed a joint motion to remand pursuant to the Veterans Claims Assistance Act (VCAA) of 2000, Pub. L. No. 106-475, 114 Stat. 2096. R. at 251-54. The Court issued an order on April 18, 2001, granting the motion. R. at 250.

In the September 27, 2001, decision here on appeal, the Board decided that the appellant was not competent for VA purposes. R. at 1-8. After considering all submitted medical opinions and field examination reports, the Board concluded that "the preponderance of the evidence establishes that the veteran lacks the mental capacity to contract or to manage his . . . own affairs, including disbursement of funds without limitation." R. at 7 (quoting 38 C.F.R. § 3.353(a) (2002)).

## II. ANALYSIS

Restoration of competency is viewed "procedurally as similar to seeking an increased disability rating–that is, as a new claim." *Sanders v. Brown*, 9 Vet.App. 525, 528 (1996); *cf. Booton v. Brown*, 8 Vet.App. 368, 372 (1995), and *Proscelle v. Derwinski*, 2 Vet.App. 629, 631-32 (1992). The Court's "task is to determine whether the Board's decision is clearly erroneous." *Sanders*, 9 Vet.App. at 529. In determining whether a Board finding is clearly erroneous, "this Court is not permitted to substitute its judgment for that of the BVA on issues of material fact; if there is a 'plausible' basis in the record for the factual determinations of the BVA, . . . we cannot overturn them." *Gilbert v. Derwinski*, 1 Vet.App. 49, 53 (1990).

The Board must base its decisions "on the entire record in the proceeding and upon consideration of all evidence and material of record and applicable provisions of law and regulation." 38 U.S.C. § 7104(a). It must provide a "written statement of the Board's findings and conclusions, and the reasons or bases for those findings and conclusions, on all material issues of fact and law presented on the record." 38 U.S.C. § 7104(d)(1). Pursuant to these statutory requirements, the Board must

> identify those findings it deems crucial to its decision and account for the evidence which it finds to be persuasive or unpersuasive. These decisions must contain clear analysis and succinct but complete explanations. A bare conclusory statement, without both supporting analysis and explanation, is neither helpful to the veteran,

4

nor "clear enough to permit effective judicial review", nor in compliance with statutory requirements.

*Gilbert*, 1 Vet.App. at 57.

"A mentally incompetent person is one who because of injury or disease lacks the mental capacity to contract or to manage his or her own affairs, including disbursement of funds without limitation." 38 C.F.R. § 3.353(a). "Rating agencies have sole authority to make official determinations of competency and incompetency for" VA purposes. 38 C.F.R. § 3.353(b). Further, section 3.353(d) states that "[w]here reasonable doubt arises regarding a beneficiary's mental capacity to contract or to manage his or her own affairs, including the disbursement of funds without limitation, such doubt will be resolved in favor of competency (see [38 C.F.R.] § 3.102 on reasonable doubt)." The Board concluded in its decision that the appellant was mentally incompetent based on the "preponderance" of the evidence. *See* R. at 7.

Under section 3.353(d) there is a presumption of competency where there is reasonable doubt regarding a beneficiary's mental capacity. Such doubt will be resolved in favor of competency. The appellant is correct that the Board did not discuss this presumption, but his argument fails to recognize the special meaning of reasonable doubt that is found in § 3.102. *See* Secretary's Motion (Sec. Mot.) at 7-8.

The appellant's sole argument is that the Board failed to apply the correct standard of review by failing to consider the presumption of competency under § 3.353(d). Appellant's Mot. at 5-6. Section 3.102 of the Code of Federal Regulations, which is specifically referenced in § 3.353(d), provides:

> It is the defined and consistently applied policy of the Department of Veterans Affairs to administer the law under a broad interpretation, consistent, however, with the facts shown in every case. When, after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding service origin, the degree of disability, or any other point, such doubt will be resolved in favor of the claimant. *By reasonable doubt is meant one which exists because of an approximate balance of positive and negative evidence which does not satisfactorily prove or disprove the claim. It is a substantial doubt and one within the range of probability as distinguished from pure speculation or remote possibility. It is not a means of reconciling actual conflict or a contradiction in the evidence.* Mere suspicion or doubt as to the truth of any statements submitted, as distinguished from impeachment or contradiction by evidence or known facts, is not justifiable basis for denying the

5

application of the reasonable doubt doctrine if the entire, complete record otherwise warrants invoking this doctrine. The reasonable doubt doctrine is also applicable even in the absence of official records, particularly if the basic incident allegedly arose under combat, or similarly strenuous conditions, and is consistent with the probable results of such known hardships.

38 C.F.R. § 3.102 (2003) (emphasis added). For the appellant to receive the presumption of competency, there must be a reasonable doubt, or a proximate balance of positive and negative evidence, as to his mental capacity. Significantly, as stated above, "reasonable doubt" requires "substantial doubt and one within the range of probability." We cannot conclude that the Board erred by not addressing the presumption of competency when the evidence weighs to the contrary. Here, the Board reviewed all the evidence of record and found that there was a preponderance of evidence establishing the appellant's incompetency. Thus, it necessarily concluded that there was not an approximate balance of positive and negative evidence to which the application of the reasonable doubt could apply. The Board said:

> There are several opinions from VA psychiatrists and field examiners in the record. One opinions [sic] from a VA psychiatrist weighs in favor of competency. However, this opinion was based upon a single evaluation. The record contains opinions from another VA psychiatrist and a VA field examiner who had the advantage of having the veteran's psychiatric history available for review in order to reach a complete conclusion. As noted above, the field examination reports reflect that the veteran's sister, his son, and his estranged spouse all stated that he did not have the presence of mind or the mental capacity to conduct business and financial transactions as his cognitive skills are severely impaired, and a VA staff psychiatrist confirmed that there had been no improvement in the veteran's mental condition to the point that he would be capable of managing his own funds. He continued to be very unpredictable, irresponsible and dysfunctional. Also, in November 1998, the VA outpatient clinic advised that the veteran came for his Prolixin injections [only] when reminded and that his personal hygiene had to be supervised. Given the above evidence, the Board finds the preponderance of the evidence establishes that the veteran lacks the mental capacity to contract or to manage his . . . own affairs, including disbursement of funds without limitation.

R. at 7. "It is not error for the BVA to favor the opinion of one competent medical expert over that of another when the Board gives an adequate statement of reasons and bases." *Boggs v. West*, 11 Vet.App. 334, 344 (1998) (quoting *Owens v. Brown*, 7 Vet.App. 429, 433 (1995)). Therefore, the Board did not err in assigning more weight to the January 1999 psychiatric examination than the May

1998 psychiatric examination. Significantly, the psychiatric examination that found the appellant incompetent was based on other findings of examiners, and was corroborated by witnesses interviewed regarding appellant's competency.

The Board was not required to apply the presumption of competency once it determined that there was a preponderance of evidence establishing that the appellant lacks the mental capacity to contract or to manage his own affairs. Here, the evidence of record demonstrates overwhelming support for the Board's decision; therefore, the Board's determination that the appellant is not competent is not clearly erroneous.

## III. CONCLUSION

Accordingly, upon consideration of the record and the pleadings filed for this appeal, and for the reasons stated herein, the September 27, 2001, Board decision is AFFIRMED.