# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 04-264

Mitchell E. Sims, Appellant,

v.

R. James Nicholson,
Secretary of Veterans Affairs, Appellee.

On Appeal from the Board of Veterans' Appeals

(Decided    February 24, 2006   )

*Peter J. Meadows*, of Ft. Lauderdale, Florida, was on the brief for the appellant.

*Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Brian B. Rippel*, Deputy Assistant General Counsel; and *Kenneth A. Walsh*, all of Washington, D.C., were on the brief for the appellee.

Before GREENE, *Chief Judge*, and LANCE and SCHOELEN, *Judges*.

GREENE, *Chief Judge*:   The appellant, Mitchell E. Sims, appeals a January 15, 2004, decision of the Board of Veterans' Appeals (Board) that determined that he was not competent to receive direct payment of his VA compensation benefits. Record (R.) at 1-20. This appeal is timely, and the Court has jurisdiction under 38 U.S.C. §§ 7252(a) and 7266. For the reasons that follow, the Board decision will be affirmed.

## I. BACKGROUND

Mr. Sims served honorably in the U.S. Navy from July 1983 to May 1987. R. at 22. In June 1990, a VA regional office (RO) awarded Mr. Sims VA service connection for an acquired psychiatric disorder. R. at 25-26. In February 1995, he was awarded service connection for schizophrenia, assigned a 100% disability rating, and advised that the RO proposed that a determination be made regarding his competency to manage his financial affairs. R. at 62-64. The

RO sent Mr. Sims a letter notifying him of the consequences of an incompetency finding and of his rights to contest the proposal. R. at 66-67. In April 1995, the RO determined that Mr. Sims was not competent to receive direct payment of his VA benefits and he did not appeal. R. at 68-69.

In October 2000, Mr. Sims requested that VA reconsider his competency status (R. at 81-82), and in January 2001, the RO determined that he remained incompetent for VA purposes (R. at 85-89). The RO explained in its decision that Mr. Sims's wife, who was serving as his fiduciary, had been contacted to provide evidence to support his claim for restoration of competency and she had not responded. R. at 86.

In July 2001, Mr. Sims again requested that VA reconsider its competency determination. R. at 109. Relying on an August 2001 VA examiner's report (R. at 100-03), the RO found that Mr. Sims was still not competent to handle direct disbursement of his VA benefits (R. at 109-13). Mr. Sims appealed that decision. In January 2004, the Board found that under 38 C.F.R. § 3.353 (2003) Mr. Sims lacked the mental capacity to contract or manage his own affairs, including disbursement of funds. R. at 2-3. In reaching its conclusion, the Board stated:

> The only such evidence offered in support of [Mr. Sims's] claim was included in the December 2000 examination report conducted by Dr. J[eppson] for the purposes of continuation of Social Security Administration benefits. This medical provider did not, however, have a review of [Mr. Sims's] claims file in making this assessment. Moreover, this assessment represents the singular definitive opinion in the record of [Mr. Sims's] competency since he filed his claim in July 2001.
> . . . .
>
> [A] December 2000 VA [mental health clinic] record indicates that the medical provider refused to recommend that [Mr. Sims's] payee status be changed. Further, when he was examined by VA in August 2001, the VA physician . . . concluded that [Mr. Sims] had a fiduciary in place and was still not competent for VA purposes. . . . Moreover, the private physician that VA specifically called upon in January 2002 for evaluation of [Mr. Sims's] competency found [Mr. Sims] to not be competent to [handle] his monies and affairs. . . . Further, the findings of [] well-documented April 2001 and May and December 2002 VA field examination reports contained in the records . . . clearly support the conclusions reached by both the August 2001 and January 2002 VA examiners, that [Mr. Sims] is incompetent for VA purposes by virtue of the service-connected paranoid schizophrenia.
>
> In summary, due to the relatively high probative value of the January 2002 VA examination report and, due to the fact that the conclusion reached therein was supported by the unilateral assessments of [Mr. Sims's] incompetency made by

another VA physician in the well[-]detailed August 2001 report, the extensive field examination, and the fact that the assessment of capability made in approximately 2000, has not been replicated in the record, the Board finds that the preponderance of the evidence is against a finding that [Mr. Sims] is competent. . . . As the evidence is not in equipoise, consideration of the benefit of the doubt rule under 38 C.F.R. §§ 3.102, 3.353(d) is not for application.

R. at 16-18. Mr. Sims appealed to the Court and argues that remand is required because (1) the Board failed to ensure compliance with the notice provisions of the Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat. 2096, codified in part at 38 U.S.C. §§ 5102, 5103, and 5103A, and with *Quartuccio v. Principi*, 16 Vet.App. 183 (2002); (2) a Veterans Service Officer (VSO) was not involved in the adjudication of his claim as required under *Coleman v. Brown*, 5 Vet.App. 371, 374 (1993); and (3) the Board failed to discuss the presumption in favor of competency under 38 C.F.R. § 3.353(d). Appellant's Brief (Br.) at 6-8.

## II. LAW AND ANALYSIS

### A. VCAA

Mr. Sims contends that remand is required because the Board did not comply with the notice provisions of the VCAA. Appellant's Br. at 7-9. The Secretary counters that the VCAA is not applicable to this case. Secretary's Br. at 20. He asserts that the term "claimant" as used in the VCAA applies only to claims for benefits under chapter 51 of title 38 of the U.S. Code ("Claims, Effective Dates, and Payments"), and that Mr. Sims is not seeking benefits, but rather has already received a benefit and is instead requesting reconsideration as to how those benefits will be distributed in accordance with chapter 55 ("Minors, Incompetents, and other Wards"). *Id.*

We have addressed similar arguments and carved out exceptions where the provisions of the VCAA are not applicable. In *Barger v. Principi*, we held that the requirement to provide VCAA notice was not applicable to claims for waiver of overpayment under title 38, U.S. Code, chapter 53 ("Special Provisions Relating to Benefits"). *Barger*, 16 Vet.App. 132, 138 (2002). In *Lueras v. Principi,* the Court recognized again that chapter 53 addresses various legal bars to or limitations upon the grant of benefits and does not address the adjudication or granting of benefits as does chapter 51. *Lueras*, 18 Vet.App. 435 (2004)*; see* 38 U.S.C. §§ 5301-5319. The Court reasoned that because chapter 53 made no reference to a "claimant," the VCAA is not applicable when the Board

3

denies a waiver of overpayment. *Lueras*, 18 Vet.App. at 439. Further, in *Livesay v. Principi*, we held that a CUE motion did not encompass a claim for benefits under chapter 51 and concluded: "CUE provides a procedural device that allows for a final RO or Board decision to be reversed or revised. A litigant alleging CUE is not pursuing a claim for benefits . . . but rather is collaterally attacking a final decision. . . ." *Livesay*, 15 Vet.App. 165, 179 (2001) (en banc).

The reasoning in *Barger*, *Lueras*, and *Livesay* applies in this case. An applicant for restoration of competency is not seeking benefits under chapter 51, but, rather, is seeking a decision regarding how his benefits will be distributed under chapter 55. *Compare* 38 U.S.C. § 501(a)(4) *with* 38 U.S.C. §§ 5501-5504. Accordingly, we hold that the notice and assistance provisions of the VCAA do not apply to such claims.

## B. VSO Involvement

Mr. Sims argues that 38 C.F.R. § 3.353(b) and *Coleman, supra*, require that a VSO be involved in the adjudication of his claim. Appellant's Br. at 7. He maintains that a VSO was not involved in his case and therefore the matter should be remanded. *Id.* In *Coleman*, the Court recognized that § 3.353(b) stressed the importance of the involvement of the VSO, now known as a Veterans Service Center Manager (VSCM), in determinations of incompetency and reversed the Board's determination of incompetency when a VSO was not involved in that process. *Coleman*, 5 Vet.App. at 374. We held that "the [Board] is not free to ignore regulations which the VA has adopted." *Id.* (quoting *Schafrath v. Derwinski*, 1 Vet.App. 589, 592 (1991)). However, since *Coleman*, the controlling regulation has been changed. In 1995, VA amended § 3.353 and the explanatory statement reads:

> In a recent decision (*Coleman* [*supra*]) the United States Court of Veterans Appeals interpreted § 3.353(b) as requiring VSO participation prior to determination of the issue of incompetency. Although the VSO was meant to play an integral role in developing evidence relating to the veteran's ability to handle his or her affairs, the intent of the regulation was to give rating boards the sole responsibility for incompetency determinations without the VSO participating in the decision. Although it was intended that evidence produced by the VSO could lead to later reconsideration of the incompetency determination, it was not intended that the VSO's concurrence be a condition precedent to rating a beneficiary incompetent. The VSO's investigation was meant merely to provide an additional safeguard which could lead to later review.

The proposed amendment provides that the rating board has the sole authority to determine the competency of beneficiaries, but that if the VSO develops new information bearing on the issue of the beneficiary's incompetency, the rating board will consider that evidence together with all other evidence of record to determine if the prior determination of incompetency should remain in effect.

60 Fed. Reg. 22,016 (May 4, 1995); *compare* 38 C.F.R. § 3.353(b) (1993) *with* 38 C.F.R.§ 3.353(b)(2), (3) (2005).

Moreover, Mr. Sims's argument that VA erred under *Coleman* in the adjudication of his claim for competency because there was not adequate involvement of a VSCM is not supported by the evidence. The record on appeal reveals that a VSCM, K.J. Swinson, developed information pursuant to Mr. Sims's claim for competency. Specifically, the VSCM advised Mr. Sims (1) in a letter dated December 2002 that a field examination to assess Mr. Sims's condition had been scheduled and was going to be conducted (R. at 358); (2) that a VA medical examination needed to be scheduled and the VA medical facility would be contacting him about setting up that appointment (R. at 308-09); (3) that he had missed scheduled examinations in June 2003 and that he needed to reschedule those with the nearest VA medical center and to contact him with any questions (R. at 314-15); and (4) that his appeal was received and was being processed and that he must submit additional evidence for consideration in his appeal to the Board (R. at 327). Under § 3.353(b), the VSCM is only required to report information to the rating agency if he or she "develops new information bearing on the issue of the beneficiary's incompetency." 60 Fed. Reg. 22,016 (May 4, 1995); 38 C.F.R. § 3.353(b)(2), (3) (2005); *see also* VA Adjudication Procedure Manual (M21-1), Part VIII, Ch. 6, para. 6.01, 6.03 (2005) (VA has ongoing duty to follow someone who is rated incompetent, i.e., with periodic field examinations, and a duty to act accordingly if there is a report of competency). Here, despite efforts to develop information, the VSCM did not obtain "new information" regarding Mr. Sims's competency to report to the rating agency. To the contrary, the evidence instead indicated that Mr. Sims remained incompetent for VA purposes. *See* R. at 135-37, 240-44, 248-51, 303-06, 339. Accordingly, Mr. Sims's allegation of Board error in this regard is without merit.

### C. Presumption of Competency

"A mentally incompetent person is one who because of injury or disease lacks the mental capacity to contract or to manage his or her own affairs, including disbursement of funds without limitation." 38 C.F.R. § 3.353(a). For purposes of disbursement of VA benefits, rating agencies

have the authority to make determinations of competency and incompetency. 38 C.F.R. § 3.353(b)(1); *see also Coleman*, 5 Vet.App. at 374. Where reasonable doubt arises regarding a beneficiary's mental capacity to contract or to manage his or her own affairs, including the disbursement of funds without limitation, such doubt will be resolved in favor of competency. 38 U.S.C. § 3.353(d); *see also* 38 C.F.R. § 3.102 (2005) (reasonable doubt doctrine).

The Board's incompetency determination is one that is reviewed under the "clearly erroneous" standard of review. *Sanders v. Brown*, 9 Vet.App. 525, 529 (1996). The Court "must set aside a finding of material fact as clearly erroneous when the Court is left with the firm conviction that a mistake has been committed." *Harder v. Brown*, 5 Vet.App. 183, 189 (1993). In determining whether a Board finding is clearly erroneous, the Court is not permitted to substitute its judgment for that of the Board on issues of material fact. *Gilbert v. Derwinski*, 1 Vet.App. 49, 53 (1990). The Court may reach this conclusion only if there is no "plausible basis" in the record for the Board's findings. *Gilbert*, *supra*. Further, the Board is required to consider, and discuss in its decision, all potentially applicable provisions of law and regulation and provide a written statement of the reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record. 38 U.S.C. § 7104(a), (d)(1); *Sanden v. Derwinski*, 2 Vet.App. 97, 100 (1992); *Schafrath*, 1 Vet.App. at 592-93.

In reaching its decision, the Board considered (1) the August 2001 medical examiner's report stating that Mr. Sims remained incompetent for VA purposes (R. at 100-03); (2) September and October 2001 field examination reports that both stated that Mr. Sims lacked the mental capacity to independently handle his income (R. at 248-51); (3) a January 2002 private psychiatric examination report that recorded that Mr. Sims was not competent to manage his own funds (R. at 135-37); (4) May and December 2002 VA field examiners' recommendations for a continuation of VA's incompetency finding based upon Mr. Sims's schizophrenia and lack of mental capacity to independently manage his income (R. at 240-44, 303-06); and (5) an August 2003 RO memorandum that indicated that Mr. Sims was assigned to a secure facility of a VA medical center psychiatric unit (R. at 339). The Board also considered and discussed the only favorable evidence in support of Mr. Sims's claim–a December 2000 medical examination conducted by Dr. Jeppson, a private physician, who stated that Mr. Sims "does appear capable of handling his own financial benefits" (R. at 260-63). *See* R. at 16.

"'It is not error for the [Board] to favor the opinion of one competent medical expert over that of another when the Board gives an adequate statement of reasons [or] bases.'" *Boggs v. West*, 11 Vet.App. 334, 344 (1998) (quoting *Owens v. Brown*, 7 Vet.App. 429, 433 (1995)). In discussing Dr. Jeppson's opinion, the Board determined that it was not entitled to probative weight because he did not have Mr. Sims's claims file to review and was conducting an examination for Social Security disability purposes. After considering the evidence, the Board found: "The preponderance of the evidence shows that because of [Mr. Sims's] service-connected paranoid schizophrenia he lacks the mental capacity to cont[r]act or manage his own affairs including the disbursement of funds without limitation, and is therefore incompetent for VA purposes." R. at 18. For a claimant to receive the presumption of competency there must be reasonable doubt as to his mental capacity. 38 C.F.R. § 3.353(d). Significantly, "reasonable doubt" requires "substantial doubt and one within the range of probability." 38 C.F.R. § 3.102. The Board concluded in its decision that there was not an approximate balance of positive and negative evidence that would trigger the presumption of competency under § 3.353(d) and that Mr. Sims was thus mentally incompetent for VA purposes based on the preponderance of the evidence. *See* R. at 18. The record on appeal supports this conclusion, and the Board provided an adequate statement of reasons or bases for its decision. 38 U.S.C. § 7104(a), (d)(1); *Sanden* and *Gilbert,* both *supra.*

Further, to the extent that Mr. Sims is arguing that the Board erred by not adequately discussing the presumption of competency, when there is no reasonable doubt as to the competency of a claimant there is no obligation on the Board to fully discuss the presumption under § 3.353(d) in its decision. *See Sanders v. Principi*, 17 Vet.App. 329, 334 (2003). Contrary to Mr. Sims's allegation that the Board failed to consider the presumption (Appellant's Br. at 7), the Board specifically cited 38 C.F.R. § 3.353(d) in its decision, and thus considered that provision of law and whether it was applicable to his case. R. at 18. Further, as stated above, a review of the Board's analysis of, and reliance upon, the VA medical examinations and field examiners' reports indicates that the Board conducted a thorough review of the record and provided reasoned analysis in support of its conclusions. R. at 6-7. The Board sufficiently explained its rationale for finding those medical opinions and reports adequate to determine that the preponderance of the evidence demonstrated that Mr. Sims remained incompetent for VA purposes. Thus, the Board decision is not clearly erroneous. *See Gilbert, supra*.

### III. CONCLUSION

Based upon the foregoing analysis and the record on appeal, the Board's January 15, 2004, decision is AFFIRMED.