Citation Nr: 1744010 
Decision Date: 09/18/17 Archive Date: 10/10/17

DOCKET NO. 08-04 954 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Montgomery, Alabama


THE ISSUES

1. Entitlement to service connection for diabetes mellitus, type II.

2. Entitlement to service connection for a headache disorder.

3. Entitlement to service connection for a heart disorder. 


REPRESENTATION

Appellant represented by: Virginia A. Girard-Brady, Attorney-at-Law


ATTORNEY FOR THE BOARD

S.M. Kreitlow



INTRODUCTION

The Veteran had honorable active military service from January 1970 to October 1970. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from rating decisions issued in September 2006, December 2007 and May 2009 of the Department of Veterans Affairs (VA) Regional Office (RO) in Montgomery, Alabama.

The Board notes that the Veteran's claims for service connection for a headache disorder and a heart disorder were initial applications to reopen prior final decisions of service connection. By decision issued in February 2012, the Board found new and material evidence had been received and reopened those claims for service connection and remanded them for additional development. The Board also remanded the claim for service connection for diabetes mellitus, type II (diabetes), in the December 2012 decision. In April 2014, the Board again remanded the Veteran's claims because it appeared they had been returned to the Board prematurely because no Supplemental Statement of the Case had been issued by the Agency of Original Jurisdiction (AOJ). At this time, the Veteran's claims have been returned to the Board with the previously requested development and adjudication having been completed. The Board finds that substantial compliance with the prior remands has been accomplished. Substantial compliance with a remand order, not strict compliance, is required. See Donnellan v. Shinseki, 24 Vet. App. 167, 176 (2010); Dyment v. West, 13 Vet. App. 141, 147 (1999). Therefore, the Board may proceed forward with adjudicating the Veteran's claim without prejudice to him. See D'Aries v. Peake, 22 Vet. App. 97, 105 (2008).

The Board further notes that, at the same time it issued the December 2012 decision, it issued a separate remand to the AOJ on a concurrent appeal the Veteran had relating to a claim for a waiver of recovery of an overpayment. That appeal remains pending on remand and has not been returned to the Board for final adjudication at this time. Thus, the Board has no jurisdiction to render a decision on that appeal right now. That appeal remains pending until such time as the AOJ recertifies the appeal to the Board. 

The issues of service connection for a headache disorder and a heart disorder are addressed in the REMAND portion of the decision below and are REMANDED to the AOJ.


FINDING OF FACT

The Veteran's diabetes is not related to his military service, nor can it be presumed to be so.


CONCLUSION OF LAW

Diabetes was not incurred in or aggravated by service. 38 U.S.C.A. §§ 1110, 1112, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303 (2016).


REASONS AND BASES FOR FINDING AND CONCLUSION

Initially the Board finds that, with respect to the claim discussed herein, VA has met all statutory and regulatory notice provisions. See 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326 (2015); see also Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015). Neither the Veteran nor his representative has argued otherwise.

With regard to the duty to assist, all attainable records have been obtained and associated with the claims file. Neither the Veteran nor his representative has identified any records that have not. The Board acknowledges that a VA examination has not been afforded the Veteran with regard to the present claim but finds that VA had no duty to provide an examination as the evidence of record fails to establish that a medical examination or opinion is necessary to assist in determining whether the Veteran's diabetes is related to his active military service. 38 C.F.R. § 3.159(c)(4)(i)(C). Hence the Board finds that VA has complied with his duty to assist the Veteran in developing his claim and may proceed with adjudication of the claim with prejudice to him.

The Veteran seeks service connection for his diabetes. He contends that his diabetes is related to his being told in service that he was losing protein in his urine. See VA Form 21-4138 dated March 23, 2009 received April 10, 2012. 

Establishing service connection generally requires medical or, in certain circumstances, lay evidence of (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a link between the claimed in-service disease or injury and the present disability. See Davidson v. Shinseki, 581 F.3d 1313 (Fed.Cir.2009); Shedden v. Principi, 381 F.3d 1163 (Fed.Cir.2004); Hickson v. West, 12 Vet. App. 247 (1999). For chronic diseases listed in 38 C.F.R. § 3.309(a) the linkage element of service connection may also be established by demonstrating continuity of symptoms since service. 38 C.F.R. § 3.303(b); see Walker v. Shinseki, 708 F.3d 1331 (Fed.Cir. 2013). 38 C.F.R. § 3.307(a)(3) provides for presumptive service connection for chronic diseases that become manifest to a degree of 10 percent or more within 1 year from the date of separation from service. 

Service connection may also be established for a current disability on the basis of a presumption under the law that certain chronic diseases manifesting themselves to a certain degree within a certain time after service must have had their onset in service. 38 U.S.C.A. §§ 1112, 1133 and 1137; 38 C.F.R. §§ 3.303, 3.304, 3.307 and 3.309(a). 

38 U.S.C.A. § 1154(a) requires that the VA give "due consideration" to "all pertinent medical and lay evidence" in evaluating a claim to disability benefits. Lay evidence can be competent and sufficient to establish a diagnosis of a condition when (1) a layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). When analyzing lay evidence, the Board should assess the evidence and determine whether the disability claimed is of the type for which lay evidence is competent. See Davidson, 581 F.3d at 1313; Kahana v. Shinseki, 24 Vet. App. 428 (2011).

Competent medical evidence means evidence provided by a person who is qualified through education, training, or experience to offer medical diagnoses, statements, or opinions. Competent medical evidence may also mean statements conveying sound medical principles found in medical treatises. It would also include statements contained in authoritative writings such as medical and scientific articles and research reports or analyses. 38 C.F.R. § 3.159(a)(1). Competent lay evidence means any evidence not requiring that the proponent have specialized education, training, or experience. Lay evidence is competent if it is provided by a person who has knowledge of facts or circumstances and conveys matters that can be observed and described by a lay person. 38 C.F.R. § 3.159(a)(2).

Initially, the Board finds that there no question as to a current disability as the evidence shows the Veteran was diagnosed to have diabetes in January 1999. See January 4, 1999 VA Primary Care treatment note. Subsequent treatment notes continue to show a diagnosis of and treatment for diabetes.

Based on the diagnosis of diabetes in January 1999, the Board further finds that service connection based upon the presumption for chronic diseases in 38 C.F.R. § 3.307(a)(3) is not warranted as the evidence fails to demonstrate the Veteran's diabetes manifested to a compensable degree within one year of his discharge from active service in October 1970. A compensable rating for diabetes requires treatment of the disability with restriction of diet. 38 C.F.R. § 4.119, Diagnostic Code 7319. Clearly treatment of the disability requires a diagnosis of it and since a diagnosis of diabetes was not rendered until January 1999 in the present case, over 28 years after the Veteran's discharge from active service, the Veteran did not received treatment for it until that time. In fact, at the time of diagnosis, the Veteran report an onset of symptoms of thirst, dry mouth, frequent urination, headaches and abdominal symptoms of only two weeks before, making it clear that the period of symptoms before diagnosis of was only of short duration. Thus, the preponderance of the evidence is against finding that service connection is warranted on a presumptive basis or under the theory of continuity of symptomatology.

However, direct service connection is warranted under 38 C.F.R. § 3.303 if the evidence establishes a chronicity in and since service or a continuity of symptomatology since service even if chronicity in service cannot be established under § 3.303(b), or of the totality of the evidence preponderates that the current disability is otherwise related to service under § 3.303(a).

The Veteran contends that he was told in service that he was "losing protein in my urine. I really did not understand at that time from my understanding, I am still losing protein, I found out that it is referred to as diabetes." See March 23, 2009 VA Form 21-4183 received April 10, 2012. His representative argued in December 2011 correspondence that the Veteran's statement suggests his current diabetes is related to service because frequent urination is a symptom of diabetes mellitus, type II. 

First, the Board is confused as to how the Veteran's representative interprets the statement by the Veteran that he was losing protein through his urine, or in other words, had excessive protein in his urine, as meaning that he had frequent urination. Proteinuria is also known as albuminuria and is the presence of an excess of serum proteins in the urine. Booton v. Brown, 8 Vet. App. 368, 369 (1995). Frequent urination is merely needing to urinate more often than usual. The Veteran's representative submitted an internet article showing symptoms of "Type 2 Diabetes" that lists frequent urination but not proteinuria or albuminuria as a symptom. Consequently, the Board does not find her argument prevailing.

Furthermore, the Board has reviewed the Veteran's service treatment records and finds that they are silent for any findings that he had proteinuria or albuminuria during his active service. In fact, there are objective laboratory findings of no albumin on urinalysis in May 1970 and on separation examination in September 1970. This contemporaneous evidence of no protein in the Veteran's urine during service is highly probative evidence that the Veteran did not have protein in his urine during service. The Board finds this evidence to be more probative than the Veteran's March 2009 statement that he was told he has losing protein in his urine because, although the Veteran is competent to state what happened in service, this statement is not made contemporaneous with service but was made 39 later and in conjunction with a claim for monetary benefits. As it is inconsistent with other evidence of record, it lacks credibility. Importantly, in making such a finding, the Board is not implying that the Veteran has any intent to deceive. Rather, the Veteran may simply be mistaken in his recollections due to the fallibility of human memory for events that occurred decades ago. This is consistent with the law's view of memory in general. See generally, Seng v. Holder, 584 F.3d 13, 19 (1st Cir. 2009) (notwithstanding the declarant's intent to speak the truth, statement may lack credibility because of faulty memory). Furthermore, the Board comments that a review of the post-service medical evidence from the mid-1990s demonstrates that the Veteran was treated for excessive levels of protein in his urine that appears to have been related to edema in his lower extremities. See e.g., April 1994 VA treatment records. Consequently, given the lack of objective evidence in-service with post-service many years later consistent with the Veteran's statement, the Board does not find the Veteran's statement to be credible that he had proteinuria or albuminuria during service or for many years after service. Rather the Board finds the more probative evidence as to that question is the contemporaneous service treatment records that fail to demonstrate the Veteran had protein in his urine during his active military service.

As for the Veteran's statement relating his diabetes to the protein in his urine, the Veteran is not competent to render such a medical opinion as a lay person. When considering lay evidence concerning service connection, the Board must determine, on a case-to-case basis, whether the particular disability is the type of disability for which lay evidence is competent; and if it is, the Board must weigh that evidence against the other evidence of record in making its determinations regarding the existence of service connection. Kahana v. Shinseki, 24 Vet. App. 428 (2011). The etiology of diabetes is a complex medical question and thus falls outside the realm of common knowledge of a lay person. Jandreau, 429 F.3d at 1372. 

The Veteran's service treatment records are furthermore silent for any other symptoms, treatment or diagnosis related to diabetes. The Veteran's September 1970 separation examination was negative for a diagnosis of diabetes. Rather, as previously discussed, the post-service treatment records show a diagnosis of diabetes over 28 years after the Veteran's discharge from active service in January 1999. 

Consequently, the Board finds that the absence of evidence of diabetes in the service treatment records or of persistent symptoms of such at separation, along with the first evidence being many years later, tends to disprove the assertion that the Veteran's diabetes was incurred during his active military service. Service incurrence may be rebutted by the absence of medical treatment for the claimed condition for many years after service. Maxson v. West, 12 Vet. App. 453 (1999), aff'd, 230 F.3d 1330 (Fed.Cir. 2000), aff'd sub nom. Maxson v. Gober, 230 F.3d 1330, 1333 (Fed. Cir. 2000) (evidence of a prolonged period without medical complaint can be considered as a factor, along with other factors concerning the veteran's health and medical treatment during and after military service); see also Horn v. Shinseki, 25 Vet. App. 231, 240 n.7 (2012) (stating that, when the Board uses the absence of evidence as negative evidence, there must be "'a proper foundation . . . to demonstrate that such silence has a tendency to prove or disprove a relevant fact.'"). The evidence of record clearly demonstrates the onset of the symptoms of the Veteran's diabetes was two weeks before he was seen for treatment and diagnosed in January 1999. The Veteran has provided no literature or medical opinion to support his contention that long-term excessive protein in the urine is a risk factor for diabetes or is even a basic symptom of diabetes. In fact, the internet article submitted by his representative failed to list such symptom at all. 

Consequently, after considering all the evidence of record, the Board finds that the preponderance of the evidence is against finding that service connection for diabetes is warranted. The Board has considered the doctrine of reasonable doubt, but finds that the record does not provide an approximate balance of negative and positive evidence on the merits. Service connection is, therefore, denied. Gilbert v. Derwinski, 1 Vet. App. 49, 57-58 (1990); 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102.
ORDER

Entitlement to service connection for diabetes is denied.


REMAND

Unfortunately, the Board finds the remand is again warranted of the Veteran's claims for service connection for headache and heart disorders for additional development to ensure a complete record is available for review.

Headache Disorder

The Board believes there are service treatment records that have not been obtained that may be relevant to the Veteran's appeal. Specifically, the service treatment records indicate the Veteran had mental health treatment while in service that may relate to the Veteran's headaches. Specifically, a September 1970 private physician's letter states his complaints of headaches are "apparently on a psychogenic basis," and he recommended full psychiatric treatment. There is also a July 1970 note that the Veteran was seen for mental health evaluation. As mental health records are often stored separately from the regular clinical records, they need to be specifically requested in order to ensure that any available records are obtained. Thus, remand is necessary to seek any available mental health treatment records.

Furthermore, the Veteran underwent VA examination in March 2012 related to his claim and a diagnosis of tension headaches was provided. The VA examiner opined that the Veteran's headache disorder, which clearly and unmistakably existed prior to service, was clearly and unmistakably not aggravated beyond its natural progression by an in-service injury, event, or illness. The examiner's rationale was that, "within three days of entering military service, Veteran was evaluated for headaches which continued on a frequent basis during his military service. SMRs show frequent headaches from the start of his service which continued unchanged during his military service. There is no evidence that it increased in severity beyond the natural course during Veteran's period of service." 

Unfortunately, the Board finds this opinion to be inadequate as it fails to consider whether the Veteran's headaches increased in severity in addition to frequency, as well as fails to adequate provide a rationale as to why the severity did not increase beyond the natural course during service. In February 1970 the Veteran was referred to Neurology for headaches possibly related to trauma. The record noted "about 6 weeks ago [prior to service], banged back of head while playing football. No tx [treatment]." The service treatment records show that, on July 29, 1970, the Veteran was referred again to Neurology for the third time for a determination of his fitness for duty. He had just been seen in Neurology on the 21st and it appears he had been determined fit for duty at that time. However, on the consultation request, it indicated the Veteran had been seen in ETS for three days straight with complaints of headaches, had been to ETS that morning and returned to his unit but was sent back to ETR from his unit later that day for sleeping on duty and unable to pull detail "because of his headaches." There is no neurology consult of record though at that time. The next thing in the service treatment records is the September 1970 private physician's letter that indicates he saw the Veteran on August 20th and he had some kind of "fugue" that resulted in him taking an "ambulance trip" and the physician diagnosing the Veteran with an Aggressive Personality Defect, as well as stating the Veteran's headaches were psychogenic in nature, thereby assigning a different etiology. Notably the Veteran had related the headaches to a head injury (or concussion with loss of consciousness) he sustained prior to his entry into service although the physicians had not ruled his headaches to be post-traumatic. In fact, the service treatment records show he was worked up both by medical and neurology without any objective findings to establish an etiology for his headaches. Thus, they had diagnosed him to have tension headaches. Thus, a medical opinion needs to take into account both whether the July 29, 1970 treatment records represent a worsening of the Veteran's headache disorder, as well as, the possible change in etiology as may be reflected by the September 1970 letter and any additional mental health treatment records obtained.


 Heart Condition

The Veteran underwent VA examination for this claim in March 2012 as a result of which the VA examiner diagnosed him to have hypertension, hypertensive heart disease and heart failure, diastolic, chronic. The examiner opined that the claimed condition was less likely than not (less than 50 percent probability) incurred in or caused by the claimed in-service injury, event, or illness. The examiner's rationale was that the Veteran currently has hypertension and congestive heart failure with preserved ejection fraction or diastolic dysfunction. Veteran did not have hypertension during his military service. Longstanding hypertension which this veteran has is a common cause of congestive heart failure due to diastolic dysfunction. There is no evidence that the diastolic dysfunction was present during veteran's period of military service.

However, the Board is confused by the examiner's medical opinion as it is not consistent with the Veteran's claimed conditions, as well as his own diagnosed conditions. The Veteran claimed service connection for a "heart condition" stating he was told he had a "heart murmur" at his induction physical and he has been treated at VA multiple times for his heart, although he did not state a specific heart condition other that he was treated for. See September 13, 2006 VA Form 21-4138.

Initially the Board notes that the Veteran did not claim hypertension and normally hypertension itself is not considered a heart disorder but rather a vascular disorder. However, in its February 2012 decision, the Board included hypertension as one of the conditions considered in reopening and remanding the Veteran's claim. Consequently, hypertension as part of the Veteran's heart disorder is part of the present case and must be considered at this time. The VA examiner correctly considered the Veteran's hypertension. 

As for any other heart disorder, the VA examiner did not diagnosis a heart murmur. Nor did he discuss the heart murmur noted at the time of the Veteran's induction examination in August 1969 or at the time of his entry into service in January 1970. The Board acknowledges that at some point the Veteran's murmur appears to have disappeared as the treatment records stop notating it being found on physical examination and instead, his physicians note there is no murmur. However, that does not negate the fact that the Veteran had a murmur noted upon entry into service and throughout service and is claiming that it worsened during his active duty. Although in the February 2012 remand, it was pointed out that there were service treatment records showing the Veteran's complaints of chest pain in service, the Board acknowledges that the remand's examination instruction neglected to request an aggravation medical opinion. 

Furthermore, although it appears the heart murmur may have resolved, it is possible that his heart murmur may have somehow evolved into the claimed current heart disorder. The record shows the Veteran has complained of chest pains for a very long time, including complaints in service. Only a medical expert can answer the question of whether the Veteran's pre-existing heart murmur was the precursor of any current heart disorder.

Furthermore, as to the examiner's current opinion, in the Diagnosis Section, the examiner checked hypertensive heart disease as a diagnosis and then, under other, also wrote Heart Failure, Diastolic, Chronic. In contrast, the examiner stated in his medical opinion the Veteran has a diagnosis of Congestive Heart Failure. However, the Veteran's VA treatment records available at that time do not show a diagnosis of any of those conditions. Treatment records subsequent to the VA examination do eventually show a diagnosis of congestive heart failure starting in January 2013 although it is unclear how the diagnosis actually came about because it was rendered during an Emergency Room visit during which the Veteran was treated for dizziness and dehydration. The next treatment record was a November 2014 inpatient admission which showed a history of congestive heart failure, although a review of the Veteran's Problem List on admission did not include this diagnosis as an active problem. In January 2015, the Veteran underwent a Cardiology Consultation that resulted in an assessment that the Veteran's anginal chest pain is likely due to coronary artery disease and likely he has heart failure with preserved left ventricle ejection fraction (HFwEF) likely due to diastolic dysfunction. According to VA treatment records through March 2017, he currently carries diagnoses of congestive heart failure, stable angina and coronary arteriosclerosis on his Problem List.

Based on the evidence, it is unclear what the basis of the VA examiner's diagnoses of hypertensive heart disease and diastolic heart disease were based upon as the VA treatment records did not show such diagnoses. It would be helpful if the examiner would identify the evidence that supports each diagnosis. Furthermore, although it appears the examiner discussed the diastolic heart failure in the medical opinion, as the treatment records appear to use that term interchangeably with congestive heart failure, it is not so clear that the term "congestive heart failure" covers "hypertensive heart disease," and, in fact, the Board doubts that it does. Therefore, the VA examiner's rationale does not cover all medical conditions diagnosed by him and, by extension, covered by the medical opinion he rendered. 

The Board also acknowledges that the Veteran previously had a diagnosis of Microvascular Heart Disease that was rendered in August 2002 based upon a left heart catheterization (LHC) conducted at VA and this diagnosis was carried until at least March 2006 on the Veteran's Problem List. This diagnosis was also discussed by the Board in its February 2012 decision in reopening and remanding this claim. Thus, any medical opinion that is rendered should also consider this diagnosis as well.

Consequently, the Board finds that a new VA examination with a medical opinion is necessary to determine the Veteran's current diagnoses as well as to consider all diagnoses of record when rendering a medical opinion.

Accordingly, this case is REMANDED for the following:

1. Request from the National Personnel Records Center (NPRC), or any other appropriate agency or record repository, the Veteran's mental health treatment records, if any, for the period of his active military service. A negative reply should be requested if records are not available.

2. Associate with the Veteran's claims file any outstanding VA and non-VA treatment records relevant to the remaining claims on appeal, including updated VA treatment records from the VA Medical Center in Birmingham, Alabama.

3. After all additional available evidence has been obtained and associated with the claims file, forward the Veteran's case to the VA examiner who conducted the March 2012 VA headache examination for an addendum opinion. If this examiner is not available, then the claims file should be forwarded to a VA medical professional who has the requisite experience to provide the medical opinions requested by the Board. An in-person examination should NOT be scheduled unless requested by the person providing the medical opinions.

Is it at least as like as not (at least a 50 percent probability) that the Veteran's pre-existing headache disorder was aggravated (i.e., any increase in severity) during his active military service from January to October of 1970? In determining aggravation, the examiner should consider and discuss whether there was an increase in the intensity and/or frequency of the Veteran's headaches, especially with respect to the July 29, 1970 referral to Neurology for a fitness for duty determination. If there was aggravation of the Veteran's headache disorder during active service, the VA examiner should then provide an opinion as to whether there is clear and unmistakable evidence that such worsening was due to the natural progression of the headache disorder.

In rendering the medical opinions requested, the examiner should consider and discuss, the Veteran's lay statements during and after service regarding the frequency and intensity of his headaches during service as shown in the service treatment records and the lay statements submitted in support of the Veteran's multiple claims, including the buddy statement submitted in November 2006, as well as the nature and etiology of the Veteran's headaches as shown by the medical evidence and whether the Veteran's headaches were primary or secondary in nature. 

The examiner should provide a complete explanation for all opinions. If the examiner cannot provide an opinion without resorting to speculation, the examiner should provide an explanation as to why this is so and note what, if any, additional evidence would permit such an opinion to be made. 

4. After completing the development in numbers 1 and 2, schedule the Veteran for a VA heart examination to determine the nature and etiology of any current heart disorder(s) (present at any time since September 2006) related to his claim for service connection. The VA examiner should be provided with access to the Veteran's virtual claims file and should review it in conjunction with the examination. Any necessary diagnostic tests and/or studies should be conducted to determine what, if any current heart disorder(s) the Veteran has presently.

After diagnosing the Veteran's current heart disorder(s)-any heart disability present since September 2006-found on examination, the VA examiner should be asked to answer the following:

a. Even if a heart murmur is not currently diagnosed, is it at least as likely as not (at least a 50 percent probability) that the Veteran's pre-existing heart murmur noted at the Induction examination in August 1969 and again on entry in January 1970 was aggravated (i.e., any increase in severity) during his active military service from January to October of 1970? In determining aggravation, the examiner should consider and discuss whether the Veteran's reported history at his separation examination in September 1970 of having a history of pain or pressure in the chest and/or shortness of breath was an indication of a worsening of the Veteran's heart murmur. If there was aggravation of the Veteran's headache disorder during active service, the VA examiner should then provide an opinion as to whether there is clear and unmistakable evidence that such worsening was due to the natural progression of the heart murmur. 

b. Furthermore, if there is no current diagnosis of a heart murmur, the examiner should provide an opinion as to whether it is at least as likely as not (at least a 50 percent probability) that any currently diagnosed (present at any time since September 2006) heart disorder is an evolution of or related to the previously diagnosed heart murmur? 

b. As for any currently diagnosed heart disorder, to include Hypertension and Microvascular Heart Disease (which, although not currently diagnosed, have been noted to be in the treatment records), is it at least as likely as not (at least a 50 percent probability) that any current heart disorder (present at any time since September 2006) is related to any event, injury or disease incurred during his active military service? In rendering an opinion, the VA examiner should consider and discuss as necessary the Veteran's report at his separation examination in September 1970 of having a history of pain or pressure in the chest and/or shortness of breath or any other evidence of such in the service treatment records and the post-service medical evidence showing complaints of chest pain and shortness of breath. 

The examiner should provide a complete explanation for all opinions. If the examiner cannot provide an opinion without resorting to speculation, the examiner should provide an explanation as to why this is so and note what, if any, additional evidence would permit such an opinion to be made. 

5. Thereafter, please readjudicate the Veteran's claims. If such action does not resolve the claims, a Supplemental Statement of the Case should be issued to the Veteran and his representative. An appropriate period of time should be allowed for response. Thereafter, these claims should be returned to this Board for further appellate review, if in order. 


The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2005).




____________________________________________
M.C. GRAHAM
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs